746 A.2d 92

**Peggy Ann MURPHY and Joseph M. Murphy,
her husband, Appellants,**

v.

**DIOGENES A. SAAVEDRA, M.D., P.C. and
Meadville Medical Center, Appellees.**

**Peggy Ann Murphy and Joseph M. Murphy,
her husband, Appellants,**

v.

**Diogenes A. Saavedra, M.D., Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 17, 1997.

Decided Feb. 16, 2000.

Reargument Denied April 18, 2000.

Mark O. Prenatt, Erie, for Peggy and Joseph Murphy.

Matthew W. McCullough, Erie, for Diogenes Saavedrea, M.D., PC.

Joel M. Snavely, John M. Quinn, Jr., Erie, for Meadville Medical Center.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

### *ORDER*

PER CURIAM.

The Court being evenly divided, the order of the Superior Court is affirmed.

Justice ZAPPALA files an Opinion in Support of Affirmance in which Chief Justice FLAHERTY and Justice NEWMAN join.

Justice CAPPY files an Opinion in Support of Reversal in which Justices CASTILLE and NIGRO join.

## *OPINION IN SUPPORT OF AFFIRMANCE*

ZAPPALA, Justice.

This is an appeal from an order of the Superior Court, which affirmed the common pleas court's grant of summary judgment in favor of Appellees. Because we agree that this medical malpractice action is barred by the applicable statute of limitations, we affirm.

On June 3, 1991, Peggy Ann Murphy, Appellant,[1] underwent a total abdominal hysterectomy, a left salpingo-oophorectomy, exploration of the left inguinal area, exploratory laparotomy, incidental appendectomy and removal of four small hydrated ovarian cysts. Diogenes A. Saavedra, M.D., performed the surgery at Meadville Medical Center (collectively referred to as Appellees). Prior to surgery, Appellant complained of left side pubic area pain, frequent urination, tiredness and difficulty walking. Following surgery, Appellant had a "different kind of pain," which was much more severe. Appellant described the pain as being "further down," and "closer to the joint." Dr. Saavedra explained to her that the pain was a result of his sewing the wall in the left inguinal area to prevent a hernia from developing.

Appellant continued to suffer from the new symptoms and visited Dr. Saavedra several times. On her first post-surgery visit, she requested her medical reports from the surgery to ascertain exactly what procedures Dr. Saavedra had performed. The report did not include any procedure involving the sewing of the wall in the left inguinal area. Appellant thereafter consulted several other physicians. On February 6, 1992, Appellant was examined by Lawson C. Smart, M.D., who

1. Although both Peggy Ann Murphy and her husband, Joseph, are appellants in this action, the use of the term "Appellant" refers only to Peggy Ann.

opined that the source of her pain might be a suture from the sewing of the left inguinal area. Appellant underwent exploratory surgery on November 24, 1992. A suture placed by Dr. Saavedra was found looped around the ligamentum teres. Appellant was informed that the suture was the cause of her pain.

On September 22, 1993, Appellants filed a praecipe for a writ of summons. They ultimately filed a complaint against Appellees in which they alleged that Dr. Saavedra negligently placed a suture around a nerve during surgery and thereafter failed to discover what he had done. On October 21, 1993, Appellants commenced a second action against only Dr. Saavedra. The complaints filed in both actions are identical in all material respects.

Appellees moved for summary judgment on the ground that Appellants' claims were barred by the two-year statute of limitations pursuant to 42 Pa.C.S. § 5524(2).[2] The common pleas court granted summary judgment in favor of Appellees. It held as a matter of law that by middle to late summer 1991, Appellants knew or reasonably should have known of the injury, the operative cause of the injury and the causal relationship between the injury and the operative conduct. The court concluded that because Appellants did not commence the malpractice action until September of 1993, it was time-barred. The Superior Court affirmed, noting that Appellant admitted in her deposition testimony that she was aware on the day of her surgery that the pain she was experiencing might be related to Dr. Saavedra's suturing.

Our standard of review is well settled. A trial court's order granting summary judgment will not be reversed unless it is established that the court committed an error of law or clearly abused its discretion. *Cochran v. GAF Corporation,* 542 Pa. 210, 666 A.2d 245, 248 (1995). Summary judgement may be

2. Section 5524 provides that the following actions must be commenced within two years:

(2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

entered only in those cases where the record clearly demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Commission,* 555 Pa. 149, 723 A.2d 174, 176 (1999). The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.* Where the issue involves a factual determination regarding what constitutes a reasonable time for the plaintiff to discover his injury and its cause, the issue is generally for the jury. *Cochran,* 666 A.2d at 248. However, where the facts are so clear that reasonable minds cannot differ, the commencement period may be determined as a matter of law. *Id.*

We must keep in mind that it is the duty of a party asserting a cause of action to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period. *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 608 A.2d 1040, 1040 (1992); *Pocono International Raceway, Inc., v. Pocono Produce Inc.,* 503 Pa. 80, 468 A.2d 468, 471 (1983); *Walters v. Ditzler,* 424 Pa. 445, 227 A.2d 833, 835 (1967). Lack of knowledge, mistake or misunderstanding does not toll the running of the statute of limitations. *Pocono,* 468 A.2d at 471.

The "discovery rule" is an exception to the general rule that once the statutory period has expired, the party is barred from bringing suit. The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. *Hayward,* 608 A.2d at 1040; *Schaffer v. Larzelere,* 410 Pa. 402, 189 A.2d 267, 270 (1963). Prior to applying the exception of the discovery rule to a case, the Court must address the ability of the injured party, exercising reasonable diligence, to know that she has been injured by the act of another. *Pocono,* 468 A.2d at 471.

Appellants concede that they commenced their action over 27 months after the surgery, but argue that the discovery rule tolled the running of the statute of limitations. Specifically, they contend that the statute of limitations did not begin to run until February 6, 1992, when Dr. Smart opined that Dr. Saavedra's suturing might be the cause of Appellant's pain. Appellants also argue that the Superior Court applied an improper standard for determining whether they exercised reasonable diligence in discovering the injury and that the injury was caused by another party's conduct. Appellants submit that because a genuine issue of material fact exists as to whether they exercised due diligence, Appellees' motion for summary judgment should have been denied.

We disagree and hold as a matter of law that Appellants knew or reasonably should have known of the injury shortly after the surgery on June 1, 1991. Because Appellants failed to commence their action until September 22, 1993, it is time-barred.

The triggering of the discovery rule was a point of contention in *Baumgart v. Keene Building Products Corporation*, 542 Pa. 194, 666 A.2d 238 (1995). Anthony Baumgart was exposed to asbestos-containing products in his workplace and was diagnosed with mesothelioma in January of 1985. He died on March 31, 1985. Within five months of his death, Baumgart's wife filed a fatal claim petition under the Workmen's Compensation Act, wherein she alleged that her husband's death had been caused by his occupational exposure to asbestos. She waited until March 26, 1987, however, to file a praecipe for writ of summons naming as defendants several manufacturers and suppliers of asbestos.

The trial court entered summary judgment for the defendants on the ground that the wrongful death and survival claims were barred by the statute of limitations. The Superior Court affirmed the summary judgment as to the survival action. This Court being equally divided, the order of the Superior Court was affirmed. The Opinion in Support of Affirmance reasoned that because the injury and its cause were not only reasonably ascertainable within the statutory

period, but were actually known to the plaintiffs, the discovery rule did not apply.[3] We stated:

> The discovery rule does not operate to exclude from the limitations period the time following the occurrence of an injury when, due to the injury, it would be impractical for a party to seek out the cause. Rather, the limitations period set by the legislature includes adequate time to deal with the injury and investigate its cause in time to commence an action. To decide otherwise would be to hold that the limitations period commences not with the occurrence of the injury, but at an indeterminate time thereafter, allowing a reasonable time to cope with the effects of the injury.

*Id.* at 200, 666 A.2d at 241.[4]

This approach is consistent with the way the discovery rule has evolved in our case law. The rule has historically been applied to circumstances where the plaintiff, despite the exercise of due diligence, was unable to ascertain the injury or its cause *within the applicable statute of limitations.* In *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959), the plaintiff underwent surgery for an ulcer. Nine years later, after continued complaints of abdominal pain, exploratory surgery revealed that a sponge had been left in the area causing the pain. The plaintiff was not precluded from filing suit as he "was unable to learn of the hidden sponge until after the two year period had expired." *Id.* at 794.

3. The Opinion in Support of Affirmance noted that Baumgart's wife knew of the alleged injury and cause when she filed the workers' compensation fatal claim petition, which was within the prescribed statutory period for the survival claim.

4. The Opinion in Support of Reversal asserted that practical problems arise from this approach. It posited that a party could discover the cause of his illness a day or a week before the expiration of the limitations period and not benefit from the discovery rule. The party would then only have a day or week to bring his cause of action. The opinion further posited that if a party reasonably ascertained his injury one week after the expiration of the limitations period, the discovery rule would apply and the party would reap the full benefit of the two year limitations period. Although we agree that such approach may seem unfair to some, this result is inevitable when enforcing a statute that hinges upon the passage of time. The same "inequity" arises any time an action is disposed of on account of the statute of limitations even though it may have been filed but one day late.

More recently, in *Pocono International Raceway, Inc., v. Pocono Produce Inc.*, 503 Pa. 80, 468 A.2d 468 (1983), we held that an action was time-barred when the plaintiff became aware of the injury within the statutory period, but failed to timely file suit. The plaintiff, Pocono International Raceway, commenced a civil action in trespass against Pocono Produce on June 27, 1980, seeking to recover for damages to its tunnel which occurred on June 15 or June 18, 1978. The plaintiff's premises closed in October of 1978, and the tunnel was sealed until early April of 1979. When the tunnel reopened, the plaintiff discovered that the tunnel had collapsed, that the structural beams were damaged and that the truck that caused the damage had been driven by one of defendant's employees. The plaintiff contended that it did not have knowledge of the injury until April of 1979. We stated, "[h]ere, the [plaintiff], having the ability to ascertain the cause of action and to institute the suit within the applicable period of limitations and failing to do so, the statute bars the action." *Id.* at 471.

Applying these concepts to the facts of the instant case, we conclude that the discovery rule was not triggered. Viewing the evidence in the light most favorable to Appellants, the record establishes that following the surgery on June 3, 1991, Appellant experienced symptoms that were different in degree, type and location from the symptoms she had experienced prior to the surgery. Appellant's own deposition testimony reveals that she immediately suspected that her severe pain may have been caused by suturing done by Dr. Saavedra.[5] When questioned about the pain, Dr. Saavedra informed

**5.** The exchange between Appellees' counsel and Appellant went as follows:

Q. At some point did you begin to suspect that the pain in your—the pain that you were experiencing might be related to a suture that had been placed by Dr. Saavedra?

A. Yes, day one in the hospital when he told me that he sewed that area, yes.

Q. Okay, and when you began seeing doctors other than Dr. Saavedra after the surgery did you report to them your suspicion that he had sutured the abdominal wall?

A. I did tell all the doctors what happened.

Appellant that he had stitched her inguinal wall to prevent a hernia from developing. Within a few weeks, Appellant sought her medical records and reported her suspicions to several physicians in the summer of 1991. On February 6, 1992, Dr. Smart opined that Appellant's suspicions were correct and that Dr. Saavedra's suturing had entrapped a nerve. Exploratory surgery was also conducted within the statutory period that confirmed that the suture was causing the pain. Accordingly, there is no genuine issue of material fact regarding Appellants' knowledge of the injury and its cause within the statutory period.[6]

Even assuming the discovery rule applies, it is evident that Appellants were aware of the injury and its cause prior to September 21, 1991. This conclusion is supported by *Groover v. Riddle Memorial Hospital*, 357 Pa.Super. 420, 516 A.2d 53 (1986), *alloc. denied*, 515 Pa. 600, 528 A.2d 957 (1987), and *Bigansky v. Thomas Jefferson University Hospital*, 442 Pa.Super. 69, 658 A.2d 423 (1995), *alloc. denied*, 542 Pa. 655, 668 A.2d 1119 (1995). In *Groover*, the plaintiff received a painful injection while she was hospitalized in March and April of 1979. Immediately after the injection, the plaintiff began to suffer severe pain and loss of control in her right leg. She visited several doctors to determine the cause of her pain, informing each doctor that the pain began after the injection was administered. In June 1983, the plaintiff was diagnosed with a sciatic nerve injury that the physician attributed to the 1979 injection. The plaintiff commenced a medical malprac-

Appellant's deposition testimony, 10/28/94 at 80.

**6.** The Opinion in Support of Reversal's reliance on *Hayward v. Medical Center of Beaver County*, 530 Pa. 320, 608 A.2d 1040 (1992), is misplaced. In *Hayward*, the plaintiff had a portion of his lung removed, which caused shortness of breath. Relying on the defendant physician's assurances that the surgery was necessary, the plaintiff contended that he could not discover that he was injured until another physician informed him three years later that the surgery was unnecessary. The instant case is clearly distinguishable, as it is undisputed that Appellants were aware of the injury within the two-year statute of limitations. Moreover, Appellant was not prevented from discovering her injury due to assurances from Dr. Saavedra. Rather, she fully investigated the medical cause of her injury, yet failed to commence her action within the statutory period.

tice action on September 3, 1983. The plaintiff argued that due to the application of the discovery rule, the statute of limitations did not begin to run until June 1983, when she discovered her injury and its cause.

The common pleas court granted summary judgment for the defendants. The Superior Court affirmed, holding as a matter of law that the plaintiff knew or reasonably should have known of her injury in the spring of 1979. The court cited deposition testimony establishing that the plaintiff immediately suspected that the pain might be a result of the injection since she suffered extreme discomfort shortly thereafter. The Superior Court recognized that a plaintiff "need not have known the precise medical cause of the injury in order to commence the running of the statute of limitations." *Id.*, at 57. The court stated:

> Thus, once the patient is aware or should reasonably have become aware that medical treatment is causing him personal injury the statute begins and the prospective plaintiff is required to begin doing those things for which the statute of limitations specifically provides time: "an opportunity to select and consult with a lawyer, investigation, initiation of suit, discovery, joinder of additional parties, etc." *Keating v. Zemel*, 281 Pa. Superior Ct. 129, 134 n. 4, 421 A.2d 1181, 1184 n. 4 (1980). It is during this two year period that the medical malpractice plaintiff, like any other plaintiff pursuing any other legal claim, makes the decision whether or not to pursue any legal rights he may possess.

*Id.* at 58, citing, *DeMartino v. Albert Einstein Medical Ctr., N.D.*, 313 Pa.Super. 492, 460 A.2d 295, 300 (1983).

In *Bigansky*, the plaintiff underwent surgery on May 11, 1988, during which the physician inserted proplast implants into her jaw. Immediately thereafter, the plaintiff experienced intense pain. On April 24, 1990, further surgery was performed which revealed that the implants were defective. The plaintiff argued that the statute of limitations did not begin to run until the subsequent surgery was performed in April 1990.

The Superior Court rejected this claim and affirmed the common pleas court's grant of summary judgment in favor of the defendants. The court held that the circumstances following the surgical procedure were sufficient to put the plaintiff on notice that she suffered an injury as a result of the conduct of another. The court noted that the case did not involve a patient suffering from mere post-operative pain. Instead, deposition testimony established that the plaintiff suffered severe and excruciating pain immediately following the surgery, which was in new and different areas of her body. The testimony further established that the plaintiff and her mother believed that there was a problem with the surgery and conveyed that concern to the doctor shortly after the operation. Thus, the circumstances were such that would put a reasonable person on notice that she had been injured and that the physician's improper or negligent performance of the procedure was the cause of the injury.

The facts of the instant case are strikingly similar to those in *Groover* and *Bigansky*. The severity and continuation of the pain reasonably should have put Appellants on notice that the discomfort was not normal post-operative pain, but rather an actionable injury. Even had Appellants not actually known that the pain was a result of the surgery, such knowledge was reasonably ascertainable. Appellants diligently investigated to determine the medical cause of the injury, but failed to file the action within the statutory period. As the Superior Court noted in *Groover*, "while appellant may be said to have exercised diligence in seeking medical care, she did not exercise diligence in seeking legal relief. The two are not synonymous." *Id.*, 516 A.2d at 58.

This case does not involve the sort of blameless ignorance which compels the application of the discovery rule. As Appellants failed to commence their action prior to the expiration of two years from the date of the injury, summary judgment was properly entered in favor of Appellees.

Chief Justice FLAHERTY and Justice NEWMAN join this Opinion in Support of Affirmance.

## OPINION IN SUPPORT OF REVERSAL

CAPPY, Justice.

The decision of the Superior Court affirming summary judgment should be reversed. The discovery rule should apply to extend the statute of limitations on this action for medical malpractice so that appellant is afforded a reasonable time to pursue a recovery for her injury. Under the Opinion in Support of Affirmance, patients will be compelled to file suit, before they know whether their pain is linked to a physician's action or is a normal side effect of the treatment or procedure. This compulsion to file suit harms all parties to the action, including physicians and hospitals, as well as their patients.[1] Moreover, by focusing on pain as the event that triggers the running of the statute of limitations, the purpose of the discovery rule is undermined. The Opinion in Support of Affirmance relies on the fact that, due to appellant's post-operative pain, reasonable minds could not disagree that appellant knew of the injury and its cause within the statutory period. In addition, that opinion's holding requires that the patient file suit based solely on pain, prior to a showing that the patient reasonably should have known that such pain was related to any medical negligence. Since this conclusion does not comport with either summary judgment law or the discovery rule, a reversal of the Superior Court opinion should result.

Summary judgment is only properly awarded where there is no genuine issue of material fact and the moving party is

1. Patients will now be forced to file suit prior to any indication that post-operative pain was caused by something other than successful surgery. This may result in higher professional liability insurance premiums for physicians and hospitals, possible physician deselection from Managed Care Organization's (MCO's), and harming physician-patient relationships. Scott Stephens Thomas, *An Insurer's Right to Settle Versus Its Duty to Defend Nonmeritorious Medical Malpractice Claims,* 16 J. Leg. Med. 545 (Dec.1995); Douglas Sharrott, *Provider–Specific Quality of Care Data: A Proposal for Limited Mandatory Disclosure,* 58 Brook. L. Rev. 85 (1992); Ann Stewart, *Physician Profiles: Consumer Protection or Excessive Exposure?,* 25 Fla. St. U.L.Rev. 957 (1998). (These articles discuss, in part, the effects that disclosure of nonmeritorious medical malpractice claims can have on physicians, patients and hospitals).

entitled to summary judgment as a matter of law. *Hayward v. Medical Center of Beaver County*, 530 Pa. 320, 608 A.2d 1040 (1992); *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245 (1995). Moreover in cases involving the discovery rule, "the point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury; only where the facts are so clear that reasonable minds cannot differ may the commencement period be determined as a matter of law." *Hayward* at 1042; *see also Cochran* at 248.

Appellees herein moved for summary judgment on the basis that appellant knew or should have known that she had an actionable injury immediately following the June 3, 1991 surgery. Thus, according to appellees summary judgment was proper because appellant did not file her medical malpractice action until 27 and ½ months after the surgery, which was after the two-year statute of limitations had run on the action. Appellant asserted that the two-year statute of limitations was tolled by application of the discovery rule, which precluded her from discovering that the surgery was the cause of her injury until February 1992.

Normally, once the given statutory period has run on an action, the complaining party is barred from bringing suit. *Hayward*, 608 A.2d at 1043. The discovery rule provides an exception to that rule, and application of the discovery rule tolls the running of the statute of limitations. *Id.* The purpose of the rule is to exclude "the period of time during which the injured party is *reasonably unaware* that an injury has been sustained so that people in that class have essentially the same rights as those who suffer an immediately ascertainable injury." [2] *Dalrymple v. Brown*, 549 Pa. 217, 701 A.2d 164, 167

2. The Opinion in Support of Affirmance ignores the fact that the purpose of the discovery rule is equitable, in that it attempts to treat all plaintiffs similarly. *Dalrymple*, 701 A.2d at 167. The Opinion in Support of Affirmance apparently recognizes the discrepancy that may arise by treating a plaintiff who became reasonably aware of her injury within the statute of limitations differently from one who became aware of her injury following the applicable limitations period, but suggests that such a result is inevitable. Opinion in Support of Affirmance, p.

(1997)(emphasis in original) *citing Hayward,* 608 A.2d at 1043. Thus, where the discovery rule applies the statute of limitations does not begin to run until "the discovery of the injury is reasonably possible." *Id.*

In *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 608 A.2d 1040 (1992)(Zappala, J. dissenting), Mr. Hayward was admitted to the hospital complaining of chest and back pain in November 1980. Following initial x-rays and exploratory surgery, Hayward's doctors removed a portion of his right lung suspected to contain a tumor. Final pathological studies showed that the mass that was removed from Hayward's lung was not a malignant tumor, but a blood clot. Following this, Mr. Hayward and his family members repeatedly questioned the doctors about whether removal of a portion of the lung was necessary. The doctors reassured them that such surgery was medically necessary. *Id.* at 1041. Immediately following surgery and for two years thereafter, Hayward experienced shortness of breath, which increased with time. During this time, the doctors who performed the surgery reassured Hayward that this type of shortness of breath was to be expected following the removal of a portion of the lung. In November 1981, Hayward went to a lung specialist, who told him that the shortness of breath was due to the decreased lung capacity resulting from the 1980 surgery. Finally, in May 1983, Hayward went to see another doctor, who informed him that the lung surgery was unnecessary and was a substantial factor in Hayward's disability (shortness of breath). In April 1985, Hayward filed a negligence action against the doctors that removed a portion of his lung. The trial court granted summary judgment in favor of

95, fn. 4. Under the Opinion in Support of Affirmance, a plaintiff who is reasonably diligent, but fails to discover her injury until the day before the statute of limitations is to run on the action, must file the action within the applicable statute of limitations, or 24 hours. However, the plaintiff who is reasonably diligent and discovers her injury the day after the statute of limitations has run on the action, would be entitled to another two years to file the action, since she discovered her injury outside the applicable statute of limitations. Although the Opinion in Support of Affirmance remarks that such a result may seem unfair, we believe that such a result is not merely unfair, but absurd and contrary to the purpose of the discovery rule.

the doctors on the basis that the two-year statute of limitations had run on the action. The Superior Court affirmed. *Id.* at 1042.

On appeal, this court held that reasonable minds could differ on whether Hayward had exercised due diligence in investigating the need for the surgery at the time he was informed of the misdiagnosis. In finding that this question should have been reserved for the jury, this court relied on a number of facts. It found that the jury could determine that Mr. Hayward had not exercised due diligence in investigating his claim because as soon as he discovered that the mass had been misdiagnosed, he should have sought a second opinion. On the other hand, the court determined that the jury could find that Hayward was reasonable in delaying his investigation, because of the doctors repeated assurances that the procedure was necessary. The court also determined that it was for the jury to weigh whether the fact that the lung specialist informed Hayward in 1981 that the shortness of breath was directly related to the surgery should have compelled him to investigate sooner; or whether Hayward was justified in delaying his investigation until 1983, when he finally discovered that "the ill effects he suffered were a result of wrongdoing and not merely the unexpected, inevitable or unforeseeable consequences of the medical treatment." *Id.* at 1043. Accordingly, based on these relevant considerations, this court reversed the lower court's grant of summary judgment.

According to the Opinion in Support of Affirmance, the instant case is distinguishable from *Hayward* because "appellant was not prevented from discovering her injury due to assurances from Dr. Saavedra. Rather, she fully investigated the medical cause of her injury, yet failed to commence her action within the statutory period." Opinion in Support of Affirmance, p. 96, fn. 6. There is little to distinguish the instant case from *Hayward.* In the instant case, appellant had surgery on June 3, 1991. Immediately following surgery she believed that there was some kind of problem related to the surgery. Appellant questioned Dr. Saavedra about the continuation of pain immediately following surgery and during

follow-up appointments. During this period of time, Dr. Saavedra assured appellant that the pain was due to the suturing that was performed during the surgery. Finally on September 30, 1991, Dr. Saavedra referred appellant to a pain specialist. But, it was not until February 1992, that appellant had the first indication that her pain might be the result of wrongdoing and not merely the unexpected, inevitable or unforeseeable consequences of her surgery.

Initially I note that appellant does not request, nor would I suggest that the statute of limitations should be tolled until November 1992—the time exploratory surgery *confirmed* that appellant's pain was directly related to the June 1991 surgery. Following this court's rationale in *Hayward*, it should have been for the jury to consider the relevant facts of: appellant's continued and severe pain, Dr. Saavedra's reassurances through September, Dr. Saavedra's referral to a pain specialist on September 30, 1991 and the meeting with the pain specialist in February 1992 and determine when appellant reasonably should have known that she had an actionable injury.

The Opinion in Support of Affirmance concludes that appellant's continued and severe pain prevented reasonable minds from differing about appellant's knowledge of her injury and its cause. Although the Opinion in Support of Affirmance may be attempting to create a bright line rule by turning the grant of summary judgment on appellant's pain, this standard charges appellant with an unrealistic burden of knowledge. According to that opinion, "[t]he severity and continuation of the pain reasonably should have put Appellants on notice that the discomfort was not normal post-operative pain, but rather an actionable injury." Opinion in Support of Affirmance at 97. Under this view, not only must the patient know that the pain is "different in kind and type of that prior to the surgery," but now the patient, a layperson, must also recognize that the "different" pain is not normal post-operative pain which will recede with time, but pain due to some negligent act of her doctor. This charges the patient with the knowledge that a medical professional would possess instead of that of a reason-

able layperson.  I believe that this is an absurd standard to place upon a layperson.

The Opinion in Support of Affirmance asserts that diligence in seeking medical care is not synonymous with diligence in seeking legal relief.  The logic of this assertion is easily conceded, however that adds no support to the conclusion that the discovery rule is not applicable in this case as ensuring one's personal health is clearly more important than securing one's legal rights.  The Opinion in Support of Affirmance places an undue burden on a patient by requiring her to file suit at the time she is exploring the medical cause of her pain or discomfort, when clearly the priority at this time is uncovering the cause of such pain or discomfort.  Accordingly, an injured party's rights are secured only where the statute of limitations is tolled during the time when she is merely exploring the possible medical cause of her pain or discomfort and is reasonably unaware that an actionable injury has been sustained.

For the reasons stated herein, the Superior Court should be reversed.  The event that triggers the running of the statute of limitations should not be the manifestation of pain, even if the pain is different than the pain prior to treatment, but should be the time when the patient reasonably should have known that she sustained an injury as a result of an error in the medical treatment.  *Hayward* at 1043.  As stressed in the dissent in *Cochran*, the condition precedent to the running of the statute of limitations is the time when the plaintiff *reasonably should know* of the injury and its cause and not the time when the plaintiff *could have known*.  *Cochran* at 251 (Cappy, J. dissenting).  The standard that the Opinion in Support of Affirmance sets forth today, once again places an oppressively high burden on the plaintiff and places this court in the role of fact-finder, a role not within the province of this court.  *Id.* In conclusion, summary judgment should not have been granted by the lower court, since reasonable minds could have differed on whether appellant's pain should have put appellant on notice that such pain was an actionable injury related to her earlier surgery.  Accordingly, the decision of the Superior

Court should be reversed and the case remanded to the trial court for further proceedings.

Justices CASTILLE and NIGRO join this Opinion in Support of Reversal.