## Glenbrook Leasing Co. v. Beausang

C.P. of Delaware County, no. 00-11481.

*Kevin William Gibson,* for plaintiff.
*James W. Christie* and *Rex F. Brien,* for defendants.

BRADLEY, *J.,* April 29, 2003—The motion for summary judgment of defendants Michael F. Beausang Jr., Esquire and Butera, Beausang, Cohen and Brennan is the subject of this opinion. This motion is based on the affirmative defense of the statute of limitations.

## STATEMENT OF THE CASE

Plaintiff Glenbrook Leasing Company is a real estate partnership consisting of four physicians who collectively practice as "Main Line Women's Health Care" (MLWHC). On or about October 1987, Michael F.

Beausang Jr., Esquire and his firm Butera, Beausang, Cohen and Brennan were retained by plaintiff to prepare an agreement of sale and deed in connection with plaintiff's proposed purchase of office space for medical offices at the Radnor House. In addition to the sale and purchase of office space, the agreement of sale also contemplated that:

"Seller shall reserve 26 parking spaces for the sole use of buyer, and in addition, nine other parking spaces reserved for patients for the period Monday through Friday, of each day of each week from 9 a.m. to 5 p.m." Paragraph 31, agreement of sale, exhibit A to plaintiff's complaint.

On October 30, 1987, Glenbrook signed and executed the agreement of sale which included paragraph 31. The real estate closing occurred on April 21, 1988, at which time a deed for office space was conveyed to Glenbrook. The deed was silent with respect to the parking spaces. The defendant law firm's representation of Glenbrook in the real estate transaction concluded in 1988.

A dispute arose between Glenbrook and the Radnor House Condominium Association in 1994 regarding a restriction of Glenbrook's use of the 35 parking spaces as a result of proposed construction to be performed by RHCA. Complaint, paragraph 10. Glenbrook objected to the temporary loss of the parking spaces as too disruptive to the medical practice of lessee MLWHC whereupon RHCA informed plaintiff that because Glenbrook was not the owner of the parking spaces, Glenbrook had no legal right to object to the proposed construction. *Id.* at paragraph 11; see also, letter dated October 11, 1994, from counsel for RHCA to MLWHC and Glenbrook

("Our internal investigation indicates that in GLC's agreement of sale with Radnor House Associates Inc. there is merely a provision reserving 35 [s]paces for GLC, but there is no transfer of title.") (Certification of Rex F. Brien in support of motion for summary judgment at exhibit E.)

On October 11, 1994, RHCA's counsel sent a letter to Glenbrook wherein he advised: "[p]lease also look at your conveyancing documents. You will see that Radnor House Associates Inc. has conveyed no title to common element spaces. The reservation of use contained in your agreement of sale was not lawfully made and, even if lawful, merged into your deed. Your deed does not transfer title or confer an exclusive easement." (Brien certif. at exhibit E, p. 3.)

RHCA threatened suit and the assessment of back charges for the cost of maintenance and reasonable rental for the subject parking spaces if the dispute was not amicably resolved. On November 21, 1994, RHCA's counsel sent a letter to defendant Beausang, Glenbrook's counsel at the time, accusing Beausang of legal malpractice. (Brien certif. at exhibit F.) A copy of this letter was faxed to Glenbrook by Beausang. *Id.*

In November 1994, Glenbrook sought a "second opinion" from Bradley Rainer, Esquire, regarding RHCA's position with respect to the subject parking spaces. See Rudolph deposition at pp. 112-14. (Brien certif. at exhibit C.) Subsequent discussions ensued between Rainer and Barbara Engler, Glenbrook's office manager and Dr. Rudolph, a physician with MLWHC regarding the possibility of a claim against Beausang. See Rainer dep. at pp. 18, 23-29, 42, 73-74, 77-78. (Brien certif. at exhibit

G.) On December 29, 1994, Rainer sent Glenbrook his opinion letter on this subject. See Rainer's letter attached to the Brien certif. at exhibit H. Mr. Rainer concluded that Glenbrook "has a potential claim against the seller and the condominium association. However, the success of each claim is questionable." *Id.* at 1. Rainer ended his opinion letter by noting that "[a]s you know, Glenbrook and/or Main Line may have claims against other parties which have not been addressed in this letter." *Id.* at 5. By "other parties," Rainer was referring to, inter alia, Beausang. See Rainer deposition at pp. 67-68; (Brien certif. at exhibit G); see also, July 3, 2002 letter from Glenbrook's attorney in this action, Kevin Gibson, Esquire, to Mr. Rainer at p. 1 ("When we recently spoke you advised that with now having your 'notes' retrieved from your file that you have a specific recollection that you had conversations with Dr. Rudolph present wherein you advised that one of those other parties could have been Glenbrook's then counsel Michael Beausang."). (Brien certif. at exhibit 1.)

In January 1995, RHCA began charging Glenbrook a $20 per parking space fee which Glenbrook refused to pay. Complaint, paragraphs 12-13. Glenbrook's dispute with RHCA over the subject parking spaces escalated into litigation. *Id.* Glenbrook requested BBCB to defend their interests in the action. The litigation in the RHCA suit culminated in a bench trial before the Honorable Clement J. McGovern in November and December 1999. Judge McGovern found in favor of RHCA and held that the intention of the parties at the time of the signing of the agreement of sale was to create a lease of parking spaces. *Radnor House Condominium Association v. Eric A. Corkhill Jr. M.D.,* no. 95-7433 (Delaware Cty. C.C.P.

2002). (Certification of Rex F. Brien attached as exhibit 2 to reply brief in further support of defendants' motion for summary judgment.) This matter was ultimately settled after appeal.

The instant action was initiated by the filing of a writ of summons on or about December 6, 2000. Glenbrook's complaint was filed on or about March 13, 2002. The complaint alleges a negligence claim against Beausang (Count I), seeks an offset with respect to defendants' attorneys fees that Glenbrook has refused to pay (Count II), and alleges that BBCB is liable for Beausang's acts and/or omissions under the doctrine of respondeat superior (Count III). (Brien certif. at exhibit A.)

Glenbrook alleges that Beausang committed professional negligence in 1987-1988 when he prepared the deed and agreement of sale on behalf of Glenbrook. Specifically, Glenbrook alleges that Beausang failed to secure ownership of the 35 parking spaces through the deed and failed to follow the provision of Pennsylvania condominium law that detail the manner in which an ownership interest in a limited common element can be conveyed. These failures in turn allegedly led to the nonjury verdict against Glenbrook in the RHCA trial before Judge McGovern.

## SUMMARY JUDGMENT

After the pleadings closed, defendants moved for summary judgment based on the affirmative defense of the statute of limitations. See 42 Pa.C.S. §5524. After extensive briefing and oral argument on this issue, summary judgment in favor of defendants was granted by order entered October 29, 2002.

In their statement of matters complained of on appeal and amended statement of matters complained of on appeal, Glenbrook claims that the trial court abused its discretion in entering summary judgment. Specifically, plaintiff asserts (1) defendants tolled the applicable statute of limitations by their continuous legal representation of plaintiff; (2) defendants' agreement with plaintiff that plaintiff need not pay legal fees at all for defense of the RHCA action or alternatively, would not have to pay legal fees until a final disposition of the RHCA action constituted an equitable tolling agreement which tolled the applicable statute of limitations; and (3) the two-year statute of limitations did not commence running until February 24, 2000, the date when Judge McGovern issued his opinion in the RHCA matter because this was the first time plaintiff discovered it had been harmed by defendants' negligence.

Pennsylvania's two-year statute of limitations governs claims for legal malpractice sounding in tort. See 42 Pa.C.S. §5524(7); *Robbins & Seventko Orthopedic Surgeons Inc. v. Geisenberger,* 449 Pa. Super. 367, 372, 674 A.2d 244, 246 (1996). In Pennsylvania, the occurrence rule is used to determine when the statute of limitations begins to accrue in a legal malpractice action. Under this rule, the statutory period commences upon the happening of the alleged breach of duty. *Id.* at 372, 674 A.2d at 246, citing *Bailey v. Tucker,* 533 Pa. 237, 251, 621 A.2d 108, 115 (1993). In the action sub judice, Glenbrook alleges that in 1988, Beausang committed legal malpractice, "by failing to ensure that the subject matter 35 parking spaces were referenced and defined in the deed whereby plaintiff took title to the office space pursuant to the agree-

ment of sale dated October 30, 1987." See complaint, paragraph 24.

An exception to the occurrence rule is the equitable discovery rule which is applied when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause. *Robbins & Seventko Orthopedic Surgeons Inc. v. Geisenberger, supra,* 449 Pa. Super. at 372-73, 674 A.2d at 246, citing *Pocono Raceway v. Pocono Produce Inc.,* 503 Pa. 80, 85, 468 A.2d 468, 471 (1983). Lack of knowledge, mistake or misunderstanding, will not toll the running of the statute. *Id.,* 503 Pa. at 85, 468 A.2d at 471.

In this case, it would be unreasonable to expect Glenbrook learned of the injury in 1988 when it received the deed to the office space which had no mention of the 35 parking spaces referenced in the agreement of sale. As non-attorneys, the individuals that constitute Glenbrook had no reason to know that the real estate doctrine of merger operated to exclude the 35 parking spaces from their ownership notwithstanding the spaces were referenced in the agreement of sale. Therefore, it is proper to invoke and apply the discovery rule in this matter. The question becomes when does the discovery rule begin to run.

On November 21, 1994, RHCA sent a letter to Glenbrook's then counsel, Beausang, which very explicitly accused Beausang of legal malpractice and detailed its basis for that opinion. See a copy of the Bennett letter attached to Brien certif. at exhibit F of defendants' motion for summary judgment. Beausang faxed a copy of this letter to Glenbrook. Moreover, in November 1994, Glenbrook sought a second legal opinion from Bradley

Rainer, Esquire, regarding RHCA's position with respect to the 35 parking spaces. Numerous discussions were had with Rainer on this topic. In December 1994, Rainer sent Glenbrook his opinion letter wherein he explained the doctrine of merger and the questionable nature of a claim against RHCA or the seller. *Id.* at exhibit H. Rainer also indicated in his letter that Glenbrook may have claims against other parties and testified in his deposition that by that statement he was referring to Beausang, among others. *Id.* at exhibit G.

From the foregoing facts, it is beyond dispute that Glenbrook acquired knowledge of the harm in late 1994 when RHCA informed them of a problem with the deed. At the same time, this was confirmed by Bradley Rainer, Esquire, from whom they sought a second legal opinion. Armed with this knowledge, however, plaintiff chose not to initiate this action until December 6, 2000, when a writ of summons was filed. Using the discovery rule to find an accrual date of November 1994 for the two-year statute of limitations, it is beyond dispute that this 2000 action is time-barred.

Glenbrook seeks to avoid the bar of the statute of limitations by asserting that equitable estoppel precludes Beausang and BBCB from raising the statute as a defense. Specifically, Glenbrook alleges that because Beausang represented Glenbrook as a defendant in the RHCA litigation, Glenbrook was "lulled" into not filing this malpractice action. (Glenbrook terminated defendants as its counsel in December 2000. See Glenbrook's answer to defendants' motion for judgment on the pleadings.) This is actually an assertion of the "continuing representation" exception. Pennsylvania courts have not

adopted the continuous representation rule under which a plaintiff's claim for malpractice accrues upon the termination of the professional relationship giving rise to the malpractice dispute. Indeed, there are several slip and memorandum opinions expressly rejecting the continuous representation rule. See *Price v. Nogi, Appleton, Weinberger & Wren P.C.*, no. 3278 Civil 1996, slip opinion (Monroe Cty. C.C.P. May 7, 2002); *Amoroso v. Morley*, no. 00-3496, 2002 U.S. Dist. Lexis 4989, 13-14 (E.D. Pa. March 25, 2002); *Svarzbein v. Saidel, Sand and Saidel P.C.*, no. 97-3894, 1999 U.S. Dist. Lexis 14516, 19-20 (E.D. Pa. September 10, 1999).

Plaintiff maintains that the Pennsylvania Superior Court in *Robbins v. Geisenberger*, 449 Pa. Super. 367, 674 A.2d 244 (1996), tacitly acknowledged that Pennsylvania has adopted the "continuous representation rule," because it relied on the Pennsylvania Supreme Court's earlier decision in *Bailey v. Tucker*, 533 Pa. 237, 621 A.2d 108 (1993). *Bailey v. Tucker* did not involve tolling of a statute of limitations but rather the question of when a malpractice action by a criminal defendant against his former defense counsel accrues. The *Bailey* court held that a claim for legal malpractice arising out of criminal representation accrues on the date the attorney-client relationship is terminated. Nothing in *Bailey* suggests, however, that it is applicable outside the criminal context. Courts applying Pennsylvania law have chosen not to extend the *Bailey* rule to civil malpractice cases, relying instead on the basic occurrence or discovery rule. See *Fiorentino v. Rapoport*, 693 A.2d 208 (Pa. Super. 1997) (applying occurrence rule); *Robbins & Seventko, supra*, 449 Pa. Super. at 372-73, 674 A.2d at 246 (applying discovery rule).

Plaintiff also argues that Pennsylvania courts are out of step with courts in numerous other jurisdictions that have recognized the continuous representation rule as a derivative of the continuing treatment rule applied in medical malpractice actions. What plaintiff fails to acknowledge, however, is that Pennsylvania courts have uniformly rejected the continuing treatment rule as a means to toll the statute of limitations in a medical malpractice action. See *e.g., Haggart v. Cho,* 703 A.2d 522, 526-27 (Pa. Super. 1997). Instead, Pennsylvania courts apply the discovery rule to determine the date when a patient can reasonably be expected to know of his injury. Applying the same to the facts of this legal malpractice action it is clear that as of 1994, Glenbrook was on notice of the harm it suffered by the failure to obtain title to the parking spaces. Accordingly, its action, commenced in 2000, is time-barred.

Glenbrook also asserts that the doctrine of equitable estoppel precludes defendants from asserting the bar of the statute of limitations. (It is noteworthy that neither in its complaint, nor in its answer to defendants' new matter asserting a statute of limitations defense, has plaintiff pleaded estoppel.) Where through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations. *Molineux v. Reed,* 516 Pa. 398, 402, 532 A.2d 792, 794 (1987). The burden of proving fraud or concealment, by evidence which is clear and convincing, is on the party asserting it.

There is no conduct remotely arising to fraud or concealment by Beausang or BBCB. Indeed, it was Beausang

who sent the letter to Glenbrook from RHCA wherein RHCA explicitly accused Beausang of malpractice in failing to secure the ownership of the 35 parking spaces. Glenbrook further argues that defendants "lulled" it into a false sense of security by advising Glenbrook that it would prevail against the claims by RHCA and as indicative of this confidence, Glenbrook need not pay counsel fees to BBCB for representation in the RHCA suit. Accepting these assertions as true, plaintiff's argument is still contradicted by the admitted fact that it actively sought a second legal opinion and was advised by counsel that it may have a legal malpractice claim against defendants. Plaintiff cannot actively investigate and receive the information that harm has occurred and then seek equitable tolling of the statute of limitations. See *Murphy v. Saavedra,* 560 Pa. 423, 746 A.2d 92 (2000).

Finally, Glenbrook asserts that the court abused its discretion in entering summary judgment in favor of defendants because the two-year statute of limitations did not begin to run until February 24, 2000, the date the Honorable Clement J. McGovern issued his findings of fact, conclusions of law and verdict, in the underlying RHCA case. Plaintiff claims this represents the first time it discovered it had been harmed by defendants' negligence.

First, this issue was not raised until two months after entry of the order granting summary judgment. It was raised in an amended statement of matters complained of on appeal. On its face, this is untimely and will not be considered. Moreover, in support of its argument, plaintiff relies on the case of *Spang & Co. v. Reed, Smith, Shaw & McClay,* 37 D&C4th 452 (Allegheny Cty. 1997).

Obviously, this 1997 case could have been brought to the court's attention prior to appeal. Finally, this argument is belied as a matter of law given Glenbrook's actual knowledge in 1994 that it may have suffered harm as a result of defendants' legal representation.