

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-5-2003

# Parkhill v. Gordon

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4082

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Parkhill v. Gordon" (2003). *2003 Decisions.* Paper 139.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/139

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 02-4082

PATRICIA PARKHILL;
WILLIAM PARKHILL

v.

LAWRENCE GORDON

Patricia Parkhill,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
( Civil Action No. 01-cv-06597)
District Judge: Honorable Harvey Bartle, III

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 3, 2003

Before: McKEE and SMITH, Circuit Judges,
and WEIS, Senior Circuit Judge.

OPINION

McKee, Circuit Judge.

Patricia Parkhill appeals the district court's dismissal of her medical malpractice

claim against the defendant Lawrence Gordon, M.D. under the applicable statutue of

limitations. Parkhill claims that her lawsuit should not be barred because the statute of

1

limitations should have been tolled under Pennsylvania's discovery rule.  For the reasons

that follow, we will affirm.

## I.

Well over 20 years ago Patricia Parkill received a medical examination of her left

ear by Dr. Lawrence Gordon, an otolaryngologist.  Dr. Gordon diagnosed otosclerosis,[1]

and recommended that corrective surgery be performed.  Parkill agreed, and on April 5,

1979, Parkill was admitted to Delaware County Memorial Hospital for a stapedectomy.[2]

On April 6, 1979, Dr. Gordon began the stapedectomy.  However, after making an

initial incision and exploring the left middle ear, he terminated the procedure. He did not

remove the stapes bone nor did he implant a prosthetic device.  The hospital discharge

report prepared by Dr. Gordon explains that he aborted the stapedectomy because of an

apparent aberrant facial nerve.[3]  In Dr. Gordon's professional medical opinion, this

---

[1] Otosclerosis is a "growth of spongy bone in the inner ear where it gradually obstructs the vestibular or cochlear window, or both, and causes progressive deafness."  Webster's Third International Dictionary 1599 (1971).

[2] A stapendectomy involves the removal of the stapes bone in the middle ear and an insertion of a prosthetic device to conduct sound to the inner ear.

[3] The Delaware County discharge report prepared by Dr. Gordon stated:
> It was noted that the middle ear was entirely ossified and there were no ossicles visible.  There was an apparent aberrant facial nerve running to the middle ear as well.  No reconstruction was possible and the ear was closed and the operation was terminated.
>    The events of the operation were described fully to the patient on the first post-operative day with her understanding of the lack of feasibility for the reconstruction of the middle ear.  Her condition was good and she was to be followed in the private office.

condition made the surgery impractical because the location of the facial nerve he thought he observed made further surgical involvement too dangerous.

Not surprisingly, Dr. Gordon now has no recollection of the procedure he performed on Parkhill, but he does not contest the accuracy of the 1979 discharge statement. Parkhill does not remember whether she ever had a post-operative office visit with Dr. Gordon or any other doctor regarding the condition of her left ear.

Parkhill did not seek a second opinion after the aborted surgery and took no steps to purchase a hearing aid for her left ear. At some point in the mid-1980's, Parkhill began to lose hearing in her right ear. Parkhill's hearing became progressively worse and in the early 1990's she purchased a hearing aid without the involvement of a physician.

Finally, in 1998, Parkhill went to see Dr. Kenneth Rosen, an otolaryngologist, for the difficulties she was having with her right ear. Dr. Rosen and his partner, Dr. Todd Rowan, told Parkill that they could not help her with the hearing problem in her right ear.

In December of 2000, Parkhill got an infection in her left ear, the ear that Dr. Gordon operated on twenty-two years earlier. On December 26, 2000, Parkhill was referred to Dr. Marc Rosen, another otolaryngologist. After reviewing a CT scan, Dr. Rosen informed Parkhill that, in his professional opinion, a stapedectomy could be performed to correct her hearing in both ears.

After her meeting with Dr. Rosen, Parkhill decided to obtain a second opinion.

---

(App. 301a.)

3

She was referred to another otolaryngologist, Dr. Joseph Atkins. Dr. Atkins agreed with Dr. Rosen, and recommended Dr. Thomas Wilcox perform the operation. On April 2, 2001, Dr. Wilcox performed a laser stapedectomy on Parkhill's left ear. The surgery was a success and Parkhill regained normal hearing in her left ear.

Some twenty-three years after Dr. Gordon aborted the initial stapedectomy on her left ear, Parkhill sued Gordon for medical malpractice alleging he negligently aborted the corrective surgery on her left ear. The district court ruled the statute of limitations barred Parkhill's lawsuit and entered judgement for Dr. Gordon. This appeal followed.[4]

## II.

As noted, Parkhill argues that the statute of limitations should have been tolled under Pennsylvania's discovery rule and her claim was thereafter not time-barred. More specifically, she claims that the discovery rule should have tolled the statute of limitations, the district court placed too much reliance on her failure to obtain a second opinion because it would not have caused her to learn that the problem in her ear could have been corrected, and Dr. Gordon's representations to her amounted to fraudulent concealment that also tolled the statute of limitations .

### A. The Discovery Rule

---

[4] We exercise plenary review over the district court's legal conclusions and its application of legal precepts to facts. *I.B.S. Financial Corp. v. Seidman & Associates, LLC*, 136 F.3d 940, 945 (3rd Cir. 1998). The district court's factual findings are reviewed for clear error. *Id.* It is uncontested that the applicable statute of limitations is two years.

As we noted earlier, the parties agree that Pennsylvania law applies and that the applicable statute of limitations is two years. Parkhill's suit is clearly beyond that period of limitations. However, Pennsylvania's discovery rule tolls the applicable statute of limitations in certain instances where a plaintiff is unable to learn of his/her injury.[5] *Murphy v. Saavedra*, 746 A.2d 92, 94 (Pa. 2000). The rule provides that if the injury is not known to the plaintiff, and such knowledge cannot reasonably be ascertained within the statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. *Id.* Before applying the discovery rule a court must, however, first address "the ability of the injured party, exercising *reasonable diligence*, to know that she has been injured by the act of another." *Id.* (citing *Pocono Int'l Raceway v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)) (emphasis added).

The standard of "reasonable" diligence is an objective one. *Burnside v. Abbott Labs.*, 505 A.2d 973, 988 (Pa. Super. 1985). Parkhill must have "exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interests of others." *Id.* Therefore, Parkhill's conduct must be evaluated in terms of what she should have known had she acted with reasonable diligence. *See Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997).

Here, the district court concluded that Parkhill did not exercise the requisite diligence because a reasonable person would have sought a second opinion within

---

[5]*See* 42 Pa. Cons. Stat. Ann. § 5524(2).

twenty-two years of the critical procedure, since the continuing problems with her hearing. "[A] diligent investigation may require one to seek further medical examination." *Cochran v. GAF Corp.,* 666 A.2d 245, 249 (Pa. 1995).

Parkhill cites *Lewey v. H.C. Fricke Coke Co.,* 31 A. 261 (Pa. 1895), in arguing that she was justified in not seeking a second opinion because she relied on the advice of Dr. Gordon for 22 years after her surgery. In *Lewey*, the plaintiff relied upon the discovery rule to bring an action in trespass eight years after the defendant had entered his land to subterraneously excavate coal. The *Lewey* court tolled the statute of limitation reasoning, that "[t]he plaintiff had no knowledge of the trespass upon hi[s] [land] or the removal of his coal and no means of knowledge within his reach." *Lewey,* 31 A. at 261.

Here, however, Parkhill obviously knew of the surgery on her left ear, and the means of discovering Dr. Gordon's error. Parkhill's substantial hearing loss over the course of the ensuing 22 years and failure to seek further medical attention for such a protracted period distinguish her case from *Lewey.* Parkhill "continued to suffer substantial hearing loss in her left ear with all its detrimental consequences for her quality of life." (Appellant's Brief at 18). Yet, she chose not to seek medical attention or seek a second opinion. Accordingly, she can not now make the showing necessary to correctly invoke the discovery rule.

### B. Getting a Second Opinion

Parkhill contends that a second opinion would not have revealed that her hearing

6

could be restored. However, her argument is purely speculative because she did not seek a second opinion nor introduce evidence that doing so would have been futile.

## C. The Doctrine of Fraudulent Concealment

Parkill argues that her claim should not be barred by the statute of limitations because Dr. Gordon's representations constitute fraudulent concealment under Pennsylvania law. "Where, 'through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry,' the defendant is estopped from invoking the bar of the statute of limitations." *Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987) (quoting *Schaffer v. Larzelere*, 189 A.2d 267, 269 (Pa. 1963)); *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 475 (Pa. 1964). However, "[m]ere mistake, misunderstanding or lack of knowledge is insufficient however, and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party." *Id.* at 794 (citation omitted). The burden of proving fraudulent concealment rested solely on Parkhill.

The district court concluded that Parkhill did not establish Dr. Gordon's fraudulent concealment, because the evidence only showed that "Dr. Gordon simply expressed his medical opinion that it was not feasible to reconstruct her ear." (App. 10a.) Moreover, the trial court found that Parkhill was "not discouraged from seeking further advice." *Id.* On appeal, Parkhill argues that the trial court's factual finding that she was not

7

discouraged from seeking further advice was clear error.[6] Parkhill testified that Dr. Gordon never told her not to seek out a second opinion. However, she presented no evidence that Dr. Gordon attempted to relax her diligence or suggest that she not seek further medical treatment for her left ear. The only evidence Parkhill puts forth that tends to show she was discouraged from seeking further advice are Dr. Gordon's reports and representations that the reconstruction of the ear was not feasible. Parkhill presented nothing to allow the district court to conclude that Gordon discouraged her from receiving a second opinion. Therefore, the court's factual finding is consistent with the record, and its conclusion does not constitute clear error.

## III.

For all the above reasons, we will affirm the district court's decision granting summary judgment.

---

[6] The trial court's factual findings are reviewed for clear error. *I.B.S Financial Corp. v. Seidman & Associates, LLC*, 136 F.3d 940, 945 (3rd Cir. 1998). Under the clearly erroneous standard, this court "may reverse only if the findings are unsupported by substantial evidence, lack of adequate evidentiary support in the record, are against the clear weight of evidence or where the district court has misapprehended the weight of the evidence." *Id.*

TO THE CLERK OF THE COURT:

Please file the foregoing Opinion.

/s/ Theodore A. McKee
Circuit Judge