Bradley U. McCAULEY, Appellant,

v.

OWENS–CORNING FIBERGLAS CORP., Pittsburgh Corning Corp., et al, Appellees.

Superior Court of Pennsylvania.

Argued March 25, 1998.

Filed May 11, 1998.

Reargument Denied July 17, 1998.

Richard P. Hackman, Philadelphia, for appellant.

Tracey M. McDevitt, Philadelphia, for Harbison Walker Refractories, appellee.

Mitchell S. Pinsly, Philadelphia, for Columbia Boilers Co., appellee.

Before SCHILLER, J., and CERCONE and CIRILLO, President Judges Emeritus.

CIRILLO, President Judge Emeritus:

Bradley U. McCauley appeals from the order entered in the Court of Common Pleas of Philadelphia County denying his motion to remove a compulsory nonsuit based on the statute of limitations. We reverse and remand for a new trial.

On May 5, 1993, Appellant Bradley U. McCauley commenced the underlying personal injury action against defendants/appellees, Owens–Corning Fiberglas Corp., *et al.*, alleging that he suffered from various asbestos-related diseases [1] as a result of occupational exposure to asbestos. McCauley claimed that on or about May 11, 1991 he was diagnosed with asbestos-related disease as a result of asbestos exposure while employed from 1947 to 1986 in construction and as a laborer and plumber.[2]

---

1. Both non-malignant diseases and malignant diseases result from exposure to asbestos. Pulmonary asbestosis/parenchymal asbestosis and pleural thickening are types of nonmalignant asbestos-related diseases. These diseases occur when the body reacts to the inhalation of asbestos fibers which become imbedded in the lungs or other tissue. Specifically, asbestosis is a pneumoconiosis caused by the inhalation of asbestos fiber dust. *Cleveland v. Johns–Manville Corp.*, 547 Pa. 402, 406 n. 1, 690 A.2d 1146, 1148 n. 1 (1997). Pleural thickening, however, is the formation of calcified tissue on the pleura, the membranes surrounding the lungs. *Simmons v. Pacor Inc.*, 543 Pa. 664, ——, 674 A.2d 232, 236 (1996). Lung cancer (pulmonary carcinoma) and mesothelioma (tumors arising from mesothelial cells in the chest, stomach, and heart) are two common types of malignant asbestos-related diseases. *See generally Marinari v. Asbestos Corp., Ltd.*, 417 Pa.Super. 440, 445, 612 A.2d 1021, 1024 (1992). At the time he instituted the underlying action, McCauley was suffering from non-malignant asbestos-related diseases.

2. A chest x-ray report from May 7, 1985 indicated that McCauley had pleural thickening along the right diaphragm; the right upper lobe of the lung also indicated the possibility of pleural thickening. In 1991, after complaining of shortness of breath, McCauley visited a physician who diagnosed him with asbestosis.

McCauley's case, consolidated with five other asbestos cases in accordance with standard Pennsylvania court practice, was tried in reverse bifurcated fashion; the first "phase" of the case involving damages[3] took place before the Honorable Albert F. Sabo. At the close of plaintiff's case, Judge Sabo entered a compulsory nonsuit based upon the statute of limitations. After denying McCauley's petition to remove the nonsuit, McCauley filed a notice of appeal. On appeal, McCauley presents the following issues for our review:

(1) Whether the trial court erred in failing to remove a nonsuit that was entered on statute of limitations grounds where plaintiff did not suffer from a compensable asbestos-related condition until 1991 or 1992, less than two years before commencing his action for personal injuries on May 5, 1993?

(a) Whether the instant action was timely filed under the applicable law existing in 1985?

(b) Whether *Giffear (Simmons )* is applicable to the case at bar?

(c) Whether the instant action was timely filed under *Giffear (Simmons )*?

■ An order granting nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause of action had been established. *Orner v. Mallick*, 432 Pa.Super. 580, 583, 639 A.2d 491, 492 (1994); *Mazza v. Mattiace*, 284 Pa.Super. 273, 277, 425 A.2d 809, 811–12 (1981); *see also Rutter v. Northeastern Beaver County School Dist.*, 496 Pa. 590, 595, 437 A.2d 1198, 1200 (1981); *Ford v. Jeffries*, 474 Pa. 588, 591–92, 379 A.2d 111, 112–13 (1977). It is well established, however, that a jury cannot be permitted to reach its verdict on the basis of speculation or conjecture.

*Id., citing Smith v. Bell Telephone Co.*, 397 Pa. 134, 153 A.2d 477 (1959).

■ An action to recover damages for injuries that are caused by asbestos exposure must be commenced within two years. 42 Pa.C.S.A. § 5524. The limitations period begins to run on a cause of action as soon as the right to institute and maintain suit arises. *Cochran v. GAF Corp.*, 430 Pa.Super. 175, 633 A.2d 1195 (1993), *affirmed*, 542 Pa. 210, 666 A.2d 245 (1995); 42 Pa.C.S.A. § 5502 (the time within which a matter must be commenced under this Chapter shall be computed from the time the cause of action accrued). The discovery rule applies in asbestos-exposure cases where the plaintiff's injury/disease may be latent. This rule provides that when the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. *Dalrymple v. Brown*, 549 Pa. 217, 701 A.2d 164 (1997). A party, however, must use reasonable diligence to be "informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period." *Baumgart v. Keene Bldg. Prods. Corp.*, 542 Pa. 194, 200, 666 A.2d 238, 240 (1995), *citing Pocono Inter. Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983).

■ The true test for determining when a cause of action accrues is to establish the time when a plaintiff could have first maintained a cause of action to a successful conclusion. *Kapil v. Association of Pennsylvania State College and University*, 504 Pa. 92, 470 A.2d 482 (1983). Pursuant to the Pennsylvania Supreme Court decision *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232 (1996),[4] which affirmed *Giffear v. Johns–Manville Corp.*, 429 Pa.Super. 327, 632 A.2d 880 (1993) (*en banc* ),[5] asbestos-related asymptomatic

---

**3.** McCauley's complaint sought compensation for his lost wages.

**4.** In *Simmons,* the supreme court noted a limited exception to the general rule that a plaintiff does not have a viable cause of action for asymptomatic pleural thickening. This exception recognizes that a plaintiff may recover damages for

the cost of medical surveillance of the condition of asymptomatic pleural thickening. *Simmons,* 543 Pa. at ——, 674 A.2d at 239–40.

**5.** *Giffear* specifically held that "as a matter of law, ... pleural thickening, absent disabling consequences or manifest physical symptoms, is a non-compensable injury and is therefore not a

pleural thickening was no longer considered a compensable injury, and therefore, not a viable cause of action for plaintiffs.[6]

In *Cleveland v. Johns–Manville Corp*, 547 Pa. 402, 690 A.2d 1146 (1997), our supreme court recently determined that the *Simmons* holding should only be applied prospectively to cases pending on appeal at the time *Simmons* was decided. *Cleveland*, therefore, had the practical effect of allowing such plaintiffs to recover damages relating to cancer or fear of cancer when they had originally asserted noncancer, asbestos-related claims. *Id.* at 411, 690 A.2d at 1151. The *Cleveland* court found that *Simmons* "represented a major landmark in asbestos litigation because this Court announced a new rule of law that definitely eliminated claims for increased risk and fear of cancer where cancer is not present." *Id.* at 413, 690 A.2d at 1152. The court also acknowledged that the *Simmons* holding precluded a cause of action for asymptomatic pleural thickening. *Id.* at 409, 690 A.2d at 1150 n. 9.

While the *Cleveland* court found that the law annunciated in *Simmons* was significant, it refused to retroactively apply *Simmons* for two major reasons: (1) there had been considerable reliance on the old pre-*Simmons* rule, and (2) due to the backlog of asbestos cases suffered by the courts, holding new trials would only exacerbate court congestion. *Id.* at 413, 690 A.2d at 1152. Finally, the court was unwilling to retroactively apply *Simmons* because to do so would "force sick and aging plaintiffs, who waited many years for their awards, back into court to re-litigate their claims." *Id.* Accordingly, it is reasonable to assume that the same prospective application of *Simmons* should hold whether in the context of increased risk and fear of cancer cases or in an asymptomatic pleural thickening case. The purpose served in limiting both causes of action is the same, namely, to "promote fairness in the adjudicative process by eliminating inequitable awards for speculative future damages."

cognizable claim in the Commonwealth." *Giffear*, 429 Pa.Super. at 335, 632 A.2d at 884.

**6.** *Giffear* was filed in September of 1993 and *Simmons* was decided in April of 1996; plaintiff

*Id. See Simmons*, 543 Pa. at ——, 674 A.2d at 238 ("the actual compensation due to the plaintiff can be more accurately assessed when the disease has manifested."). Because both *Giffear* and *Simmons* were decided after McCauley filed the underlying personal injury action in May of 1993, we are bound by the holding in *Cleveland* which dictates that we apply pre-*Giffear* case law in deciding the instant appeal.

We are guided by the principles and rules set forth in *Marinari v. Asbestos Corp., Ltd.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992) – a landmark asbestos exposure case that was decided before *Giffear*. The *Marinari* decision most notably established the "separate disease rule" in this Commonwealth. Under this rule, the *Marinari* court held that a "[p]laintiff's discovery of a nonmalignant, asbestos related lung pathology, whether or not accompanied by clinical symptoms of impaired pulmonary function, does not trigger the statute of limitations with respect to an action for a later, separately diagnosed, disease of lung cancer." *Id.* at 442, 612 A.2d at 1022. The court adopted the separate disease rule based upon the rationale that:

> The damage to the human body which may result from asbestos exposure does not occur as a seamless progression of a single pathology. Instead, **exposure to asbestos may result in a variety of benign and malignant conditions, each of which may occur at widely divergent times.**

*Id.* at 445, 612 A.2d at 1024 (emphasis added). In effect, due to the speculative nature of predicting when and if future benign and/or malignant diseases will result from an exposure to asbestos, the court found that allowing a plaintiff to have only a single cause of action for both non-malignant and all future malignant injury would lead to several inequitable results. *Id.* at 449, 612 A.2d at 1026. Accordingly, the court determined that the plaintiff's cause of action for non-malignant, asymptomatic pleural thickening, which had been filed beyond the two year statute of limitations, did not preclude

filed his complaint that alleges, *inter alia*, pleural thickening in May of 1993 – four months before the superior court's *en banc* decision and almost three years before *Simmons*.

his later timely action for the malignant asbestos-related disease of lung cancer. *Id.* at 453, 612 A.2d at 1028.

After an exhaustive review of the law, we glean the following distinctions and changes in asbestos-exposure case law before and after our *Giffear* decision. Pre-*Giffear* (i.e., *Marinari*) plaintiffs were able to bring more than one cause of action, each of which invoked completely separate statute of limitations periods, for distinct non-malignant (including asymptomatic pleural thickening) and malignant asbestos-related diseases. Each action was independent of the other due to the often inconsistent nature of the progression of such asbestos-exposure diseases. Therefore, once a plaintiff commenced suit in a timely manner upon discovering each separate disease, a plaintiff could be compensated for the injuries arising out of these many "separate and distinct" diseases. *See Busfield v. A.C. & S. Inc.*, 434 Pa.Super. 424, 425, 643 A.2d 1095, 1096 (1994) ("*Marinari* recognizes that since there is no medical connection between the non-malignant and malignant conditions, it is unwise to require an asbestos plaintiff to recover speculative future damages in one lawsuit."); *Morrison v. Fibreboard Corp.*, 428 Pa.Super. 114, 116, 630 A.2d 436, 437 (1993) (under the "two disease rule" for asbestos actions, a second action may be brought if asbestos-related malignancy develops following recovery on separate claim for pleural thickening).

After *Giffear* was decided, courts began to focus on whether asbestos-plaintiffs had manifested any physical symptoms or disabling consequences as a result of their asbestos exposure. *See Simmons, supra; Alexander v. Carlisle Corp.*, 449 Pa.Super. 416, 674 A.2d 268 (1996); *Randt v. Abex Corp.*, 448 Pa.Super. 224, 671 A.2d 228 (1996); *Busfield, supra; DiDio v. Philadelphia Asbestos Corp.*, 434 Pa.Super. 191, 642 A.2d 1088 (1994). In other words, if a plaintiff's asbestos-related disease were "symptomatic" such that it would give rise to compensable injuries, a cause of action was established; if, however, a plaintiff suffered from "asymptomatic" asbestos disease, courts refused to recognize a cause of action. Thus, the law remained unchanged both prior to and post *Giffear* with regard to the right to bring a later

cause of action for separate and distinct non-malignant symptomatic or malignant asbestos-related disease.

Presently, one aspect of this case concerns the issue of whether we should retroactively apply the rule in *Simmons* as it relates to the statute of limitations for asymptomatic pleural thickening actions that are no longer cognizable under *Simmons*. The trial court would have us prospectively apply *Simmons* even in this statute of limitations context. In so concluding, the trial court states that:

> Given that the substantive law in *Giffear* has been held to have only prospective application, an inference can readily be drawn that the two year statute of limitations would need to be considered in conjunction with the substantive law in effect in May, 1993 [the time when McCauley filed his complaint].

> Nevertheless, it would be inconsistent to apply *Giffear* prospectively in one context (substantive law for relief) and retroactively with respect to statute of limitations issues. This is especially true given that the substantive law impacting when a pleural thickening action may be brought takes upon an integral aspect of a statute of limitations analysis.

We are persuaded by the sound reasoning of the trial court with regard to applying *Simmons* prospectively both substantively and as to the statute of limitations; we, however, must reverse the trial court's decision to grant a nonsuit after examining the facts of this case and applying them to the substantive law established in *Marinari*.

McCauley argues that his cause of action did not accrue until he first "understood" or "learned" that he suffered from an "asbestos-related disease" – sometime in 1991–1992. Appellees, on the other hand, claim that McCauley's cause of action accrued on the date that he was originally diagnosed with asymptomatic pleural thickening in 1985. Accordingly, appellees assert that McCauley's 1993 action was untimely given the two year statute of limitations.

We note, generally, that a plaintiff's lack of knowledge, misunderstanding or

mistake will not toll the running of the statute of limitations. *Bigansky v. Thomas Jefferson Univ. Hosp.*, 442 Pa.Super. 69, 658 A.2d 423 (1995); *Bradley v. Ragheb*, 429 Pa.Super. 616, 633 A.2d 192 (1993). Furthermore, McCauley's assertion that he did not understand or know that he was suffering from an asbestos-related disease in 1985 is belied by the record. McCauley's response to defendant-Uniroyal, Inc.'s motion for summary judgment states that "Mr. McCauley was advised of radiologic asbestos findings" which were the result of a 1985 chest x-ray report. This chest x-ray report from a May 7, 1985 examination indicates that McCauley had pleural thickening along the right diaphragm; the right upper lobe of the lung also indicated the possibility of pleural thickening. Under *Marinari*, a plaintiff with asymptomatic pleural thickening had an injury sufficient to give rise to a cause of action. *See Kapil, supra.* Instantly, McCauley had a viable cause of action for asymptomatic pleural thickening which accrued at the time he was diagnosed – a "reasonably possible" time to discover his injury. *Dalrymple, supra.* Furthermore, it was McCauley's duty to use reasonable diligence to be informed of his asbestos-related condition so that he could file suit within the appropriate statute of limitations. *Dalrymple, supra ; Pocono Inter. Raceway, supra.* His failure to file suit within the two year limitations period, however, waived this asymptomatic pleural thickening cause of action. *Marinari, supra.*

■ Although McCauley may have waived an action to recover for his asymptomatic pleural thickening, he still has the right to bring a later action for a separate disease which may be discovered as a result of his asbestos exposure. *Marinari*, 417 Pa.Super. at 453–54, 612 A.2d at 1028 ("an asbestos plaintiff may assert, in a second lawsuit, a claim for a distinct, separate disease if and when it develops at a later time."). Again, this later action would have to be commenced within two years of his discovery of such separate or distinct disease.

In fact, if McCauley suffered from a separate disease in 1991–1992, the trial court would have improperly granted a compulsory nonsuit at the conclusion of the damages phase of McCauley's trial.

In order to determine whether nonsuit was proper we must decide what, if any, physical manifestations of an asbestos-related disease McCauley discovered in 1991 or 1992. First, however, we are compelled to note that McCauley, failed to have the damages portion of his trial transcribed for our review. This burden falls squarely on McCauley's shoulders since he is the appellant. Pa. R.A.P.1911 (the appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor). In the record, we are provided with one page of a deposition manuscript of McCauley's testimony. This relevant testimony uncovers the following medical findings: A chest x-ray report from May of 1985 indicates that McCauley had pleural thickening along the right diaphragm; the x-ray also indicates the possibility of pulmonary thickening on the right upper lobe of the lung. This same 1993 report also notes that McCauley suffers from pleural plaques (a manifestation of asbestos-related pleural disease or pleural asbestosis). A 1996 report prepared by a Dr. Auerback states that McCauley suffers from asbestosis as well as asbestos related pleural disease—both a result of his occupational history of asbestos exposure.[7] This report contains the following important information:

> [McCauley's] medical records were reviewed from Neumann Medical Center and the office records of Dr. De. An x-ray report of **May 11, 1991**[8] from Neumann Medical Center demonstrates mild CVD most likely **on the basis of asbestosis.**
>
> In conclusion, in my professional opinion, Mr. McCauley has asbestosis as well as asbestos related pleural disease. The pulmonary function demonstrates restriction.
>
> [Emphasis added]

7. Prior to seeing Dr. Auerback, McCauley claimed that the defendants sent him to have a breathing test. There is no further evidence in the record regarding such a test or the resultant findings of such test.

8. An October, 1993 chest x-ray reaffirms the fact that no changes in McCauley's medical condition had occurred since this May, 1991 examination.

Finally, McCauley also testified that around 1991 or 1992 he started to experience shortness of breath.

In order to distinguish between the different asbestos-related medical conditions that are considered "separate" or "distinct" such that each gives rise to a separate cause of action, we refer to the following language in *Marinari*:

> Pulmonary asbestosis or parenchymal asbestosis occurs within the lungs; pleural asbestosis occurs in the pleural cavity. Pleural thickening, one of the many manifestations of pleural asbestosis, may occur independent of or in conjunction with pulmonary asbestosis. [citation omitted] **Each of these diseases, i.e., pulmonary asbestosis, asbestos-related pleural disease, lung cancer, and mesothelioma, is recognized as a separate, and distinct disease.**

*Marinari*, 417 Pa.Super. at 447–48, 612 A.2d at 1025 (emphasis added) (*citing to Sheppard v. A.C. & S. Co.*, 498 A.2d 1126 (Del.Super.1985)). Instantly, there is no doubt that a cause of action accrued for McCauley in 1985 when he was told that he had pleural thickening. *Marinari*, 417 Pa.Super. at 453, 612 A.2d at 1028. From our review of McCauley's limited medical history, it appears that McCauley suffered asbestosis in or around the years 1991 and 1992. Such a condition, if found to be pulmonary asbestosis, is considered a disease that is separate and distinct from McCauley's 1985 asymptomatic pleural thickening condition. *Marinari, supra.*

■ Finally, it is undisputed that McCauley was aware that he suffered from shortness of breath in 1991 and 1992. Although shortness of breath is a recognized symptom of asbestosis and asbestos-related disease, this condition alone is not considered a compensable injury. *Randt, supra* (*citing Taylor v. Owens–Corning Fiberglas Corp.*, 446 Pa.Super. 174, 187 n. 2, 666 A.2d 681, 687 n. 2 (1995)). McCauley's medical records, however, indicate that in addition to suffering shortness of breath he also suffered from asbestosis and other asbestos-related conditions (i.e., pleural plaques) in 1991–1992. In *Altiere v. Fibreboard Corp.*, 421 Pa.Super. 297, 617 A.2d 1302 (1992) (*en banc*), our court in *dicta* stated that where the plaintiff was experiencing pulmonary asbestosis and consequent shortness of breath, the plaintiff's disease was no longer considered asymptomatic. *Id.* at 299, 617 A.2d at 1303.

■ Accordingly, asbestosis and shortness of breath, the condition and symptoms from which McCauley's medical records indicate he suffered in 1991 and 1992, were most likely not asymptomatic conditions of asbestos exposure. Rather, they can arguably be considered part of a separate and distinct disease which triggered the statute of limitations on a second action. *Marinari, supra.* Because McCauley instituted suit within the two years of discovering his symptoms/condition in 1991 and 1992, the trial court should not have granted a compulsory nonsuit. Viewing the evidence and all reasonable inferences in the light most favorable to McCauley, a jury could have reasonably concluded that the elements of a viable cause of action for a separate and distinct asbestos-related disease had been established. *Orner, supra.*

Order reversed and case remanded for a new trial. Jurisdiction relinquished.

CERCONE, President Judge Emeritus, concurs in the result.