**Edward GATLING, Jr. and Darlene Gatling, h/w, Appellants,**

**v.**

**EATON CORP., Uniroyal, Inc., Green Tweed & Co., A.W. Chesterson, Inc., AC & S Corp., Rite Hose Packing, Inc., Crane Packing, Rapid–America Corp., Cutler Hammer Companies, Clark Controller Companies, Shepard Niles, Appellees.**

Superior Court of Pennsylvania.

Argued April 23, 2002.

Filed Aug. 29, 2002.

---

William C. Bensley, for appellants.

Ann E. Seyle–Fenton, Philadelphia, for UniRoyal, appellee.

Before DEL SOLE, P.J., MONTEMURO * and BECK, JJ.

DEL SOLE, Presiding Judge

¶ 1 Edward Gatling, and his wife Darlene Gatling appeal from the order granting Appellees' motion for summary judgment. Upon review, we affirm.

* Retired Justice assigned to the Superior Court.

¶ 2 Edward Gatling alleges that he was exposed to asbestos during his employment with the Budd Company as a pressman from 1974 through 1980. In December of 1988, Appellants filed suit against Uniroyal, Inc. and several other defendants for personal injuries as a result of asbestos exposure. Appellants' case was tried before a jury in 1993. The jury returned a verdict in favor of the defendants. No appeal was taken from that verdict.

¶ 3 Subsequently, Appellants filed a second complaint in October 2000 against Uniroyal and several other defendants for personal injuries resulting from asbestos exposure. Appellants asserted that Gatling was exposed to asbestos during his employment with the Budd Company from 1973 to the time of the lawsuit. Uniroyal filed a motion for summary judgment on the basis of *res judicata* and the statute of limitations. The trial court granted the motion for summary judgment. This appeal followed.

■ ¶ 4 In our review of a case decided on summary judgment, a trial court's order granting summary judgment will not be reversed unless it is established that the court committed an error of law or clearly abused its discretion. *Murphy v. Diogenes A. Saavedra, M.D., P.C.*, 560 Pa. 423, 746 A.2d 92, 94 (2000). Summary judgment may be entered only in those cases where the record clearly demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* The record must be viewed in the light most favorable to the nonmoving party, and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Id.*

■ ¶ 5 Appellants first argue that the trial court improperly granted the motion for summary judgment because dis-covery had not been completed. Appellants' Brief at 13–16. Appellants assert that completion of discovery is a prerequisite to the entry of summary judgment according to Pa.R.C.P. 1035.2(2). Appellants' Brief at 14. Appellants seem to presuppose that they should have been allowed unlimited discovery prior to the trial court ruling on their summary judgment motion. This is simply not the case. Summary judgment may be entered prior to the completion of discovery in matters where additional discovery would not aid in the establishment of any material fact. *Manzetti v. Mercy Hosp. of Pittsburgh*, 565 Pa. 471, 776 A.2d 938, 951 (2001); Pa.R.C.P. 1035.2(1).

¶ 6 In this case, additional discovery would not have aided in the establishment of any material fact. The trial court granted the motion for summary judgment on the basis of *res judicata* and the statute of limitations. No additional discovery would have established any material fact affecting this ruling.

■ ¶ 7 Appellants also make a claim that Appellee perpetrated a fraud upon the trial court handling the present action by misstating the law and submitting a misleading jury charge. Appellants' Brief at 16–17. Appellants claim that Appellee committed fraud by failing to include in the jury charge reference to Appellee's prior position in the 1988 action, namely that Gatling had no symptoms at that time, and should he develop symptoms in the future he could return to court at that time. Appellants' Brief at 16–17. Appellants maintain that Appellee defrauded the trial court judge who was "... vulnerable to this mendacity, through no fault of his own, because he had only overtaken supervision of the asbestos program in or about February 2001." Appellants' Brief at 16–

18. We find this argument to be unpersuasive.

¶ 8 Initially we note that the position ascribed to Appellee, that a claimant who is not experiencing symptoms as a result of an asbestos-related disease may later return to court if symptoms develop, is not an incorrect statement of the law. As will be addressed in further detail, Pennsylvania has adopted a two-disease rule in asbestos litigation. *See Marinari v. Asbestos Corp.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992). Moreover, other than making the bald accusation, Appellants fail to sufficiently identify in what manner Appellee misled the trial court. Furthermore, we decline to accept the conclusion that the trial court was so vulnerable as to be misled by Appellee simply because the trial court judge had just recently overtaken supervision of the asbestos program.

¶ 9 The remainder of the issues raised by Appellants question the trial court's propriety in granting the motion for summary judgment on the basis of *res judicata* and the statute of limitations.

¶ 10 According to Appellants' own brief, they had filed a complaint for symptomatic pleural asbestosis against numerous asbestos product manufacturers, including Uniroyal, on December 5, 1988. Appellants' Brief at 3. The record also reflects that Gatling claimed to be suffering from asbestosis and various related symptoms in the 1988 lawsuit, and sought compensation for those symptoms. In his 1988 complaint, Gatling asserted that he was diagnosed on or about August 5, 1987 as having asbestosis as a result of exposure to asbestos. Furthermore, in response to interrogatories, Gatling alleged that he was suffering from shortness of breath, exertional intolerance, weakness, fatigue, and general malaise, as well was mental anguish. After trial, the jury returned a verdict against Appellants finding that Gatling did not have the claimed asbestos-related injury and did not have any asbestos-related symptoms.

¶ 11 Appellants assert that beginning in mid–2000, Gatling noticed that his breathing was becoming more difficult, especially when he tried to exert himself. Appellants' Brief at 3. Accordingly, Gatling sought medical attention. *Id.* He was diagnosed with pulmonary asbestosis and a severely reduced diffusion capacity. Appellants' Brief at 3. Appellants filed a claim for pulmonary asbestosis on October 13, 2000.

¶ 12 We find that the trial court properly granted the motion for summary judgment on the bases of *res judicata* and the statute of limitations. We begin with the court's ruling on the basis of *res judicata*.

¶ 13 Invocation of the doctrine of *res judicata* (claim preclusion) requires that both the former and latter suits possess the following common elements:

1. identity in the thing sued upon;

2. identity in the cause of action;

3. identity of persons and parties to the action; and

4. identity of the capacity of the parties suing or being sued.

*Chada v. Chada*, 756 A.2d 39, 42 (Pa.Super.2000).

¶ 14 We find that the 1988 action and the 2000 action possess all of the common elements necessary for the invocation of claim preclusion. There is no question that the persons and parties to the two lawsuits are identical and that the capacity of the parties involved are the same in both suits. The question arises in determining whether there is identity in the thing being sued upon and in the cause of action.

¶ 15 We find that the issue being sued upon and the cause of action is the same in

each case. Pleural asbestosis and pulmonary asbestosis are both nonmalignant diseases, *McCauley v. Owens–Corning Fiberglas Corp.*, 715 A.2d 1125, 1127, n. 1. In both the action filed in 1988 and the action filed in 2000, Appellants made claims for symptomatic nonmalignant asbestos-related diseases. These claims are identical. Appellants argue that the causes of action are not the same because Gatling developed different diseases, and each disease gives rise to separate and distinct causes of action. Appellants' Brief at 8. We disagree. In order to fully address this claim we look to the law in Pennsylvania related to asbestos litigation.

¶ 16 Pennsylvania has established the "two-disease rule" in relation to asbestos litigation. *See Marinari v. Asbestos Corp.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992). Under *Marinari*, a person may bring separate claims for nonmalignant disease and malignant cancer without invoking *res judicata. Marinari*, 612 A.2d at 1024. Subsequent cases further refined the rule established in *Marinari*. This Court later held that a person with non-malignant, **asymptomatic** asbestos-related conditions does not have a cause of action. *Giffear v. Johns–Manville Corp.*, 429 Pa.Super. 327, 632 A.2d 880, 884 (1993), aff'd *Simmons v. Pacor Inc.*, 543 Pa. 664, 674 A.2d 232 (1996). *Giffear* has been applied only prospectively. Following *Giffear*, this Court permitted litigation of a second claim for **symptomatic** nonmalignant disease where an original pre-*Giffear* claim was for an **asymptomatic** nonmalignant disease. *McCauley v. Owens–Corning Fiberglas Corp.*, 715 A.2d 1125 (Pa.Super.1998).

¶ 17 The Pennsylvania Supreme Court has also held that a person with symptomatic pleural thickening may bring a later claim for malignant conditions. *McNeil v. Owens–Corning Fiberglas Corp.*, 545 Pa. 209, 680 A.2d 1145 (1996). In addressing the two-disease rule, the Supreme Court stated:

> Clearly, the cancer and non-cancer diseases in the current case constitute separate claims. Pennsylvania courts have consistently recognized the medical distinctions between malignant and nonmalignant asbestos-related injuries.

*McNeil*, 680 A.2d at 1148.

¶ 18 In the case *sub judice*, Appellants are now filing a second action for a symptomatic nonmalignant disease. Gatling claims that this action is based on a disease that is different and separate from the one upon which the 1988 action was based, and as a result, *res judicata* is not invoked.

¶ 19 The two-disease rule in Pennsylvania distinguishes between nonmalignant and malignant diseases and allows causes of action for each of them. As previously noted, Appellants' prior action filed in 1988 was for **symptomatic** nonmalignant asbestos-related disease. The action filed in 2000 was also based on a symptomatic asbestos-related disease. The identical issue is being sued upon in this case. The two-disease rule recognizes separate actions for **nonmalignant** and **malignant** diseases. A second claim based on a symptomatic nonmalignant disease is not cognizable. Thus, *res judicata* precludes the second action filed by Appellants.

¶ 20 Furthermore, Appellants' action does not fall within the exception recognized by *McCauley*. As stated, *McCauley* allows for a second action based on a non-malignant disease, where the first action was filed before *Giffear* was rendered and where the pre-*Giffear* claim was for an **asymptomatic** nonmalignant disease. Although Appellants filed their claim prior to the decision in *Giffear*, the lawsuit was based on Gatling's claim of a symptomatic nonmalignant disease, as acknowledged by

Appellants, and reflected in the record. Appellants' Brief at 3. The fact that the jury returned a verdict against him and found that he had no asbestos-related symptoms is of no consequence. Appellants filed a claim for symptomatic nonmalignant asbestos-related disease. Accordingly, the trial court properly granted the motion for summary judgment on the basis of *res judicata*.

 ¶ 21 The trial court also granted the motion for summary judgment on the basis of the statute of limitations. We find that this basis was also proper.

 ¶ 22 The statute of limitations begins to run as soon as the right to institute and maintain a suit arises. *Dalrymple v. Brown*, 549 Pa. 217, 701 A.2d 164, 167 (1997). The statute of limitations requires aggrieved individuals to bring their claims within a certain time of the injury, so that the passage of time does not damage the defendant's ability to adequately defend against claims made. *Id.* Once the prescribed statutory period for commencing a cause of action has expired, the complaining party is barred from bringing suit. *Baumgart v. Keene Bldg. Prods. Corp.*, 542 Pa. 194, 666 A.2d 238, 240 (1995).

 ¶ 23 The discovery rule is an exception to this rule and its application tolls the running of the statute of limitations. *Id.* The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. *Murphy*, 746 A.2d at 94. Prior to applying the discovery rule to a case, the court must address the ability of the injured party, exercising reasonable diligence, to know that the party has been injured by the act of another. *Id.* A party must use reasonable diligence to be "informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within this prescribed limitations period." *Baumgart v. Keene Bldg. Prods. Corp.*, 542 Pa. 194, 666 A.2d 238, 243 (1995) (citing *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983)).

 ¶ 24 The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence. *Dalrymple*, 701 A.2d at 167. In addressing reasonable diligence, the Supreme Court has stated:

> Reasonable diligence is just that, a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case.

*Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245, 249 (1995). The Supreme Court has also stated:

> ... we have not hesitated to find as a matter of law that a party has not used reasonable diligence in ascertaining the cause of an injury thus barring the party from asserting their claim under the discovery rule.

*Cochran*, 666 A.2d at 248. In reviewing what courts have found to be reasonable under the facts of a particular case, it has been held that the statute of limitations is not tolled by mistake or misunderstanding. *Id.* at 249. Furthermore, a "diligent investigation may require one to seek further medical examination as well as competent legal representation." *Id.*

¶ 25 Related to the running of the statute of limitations in asbestos litigation in Pennsylvania is the "two-disease rule". *See Marinari v. Asbestos Corp.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992). The applicable statute of limitations in this case is two years. 42 Pa.C.S.A. § 5524.

¶ 26 As stated, the two-disease rule in Pennsylvania distinguishes between non-

malignant and malignant diseases and allows causes of action for each of them, upon discovery. It is clear that Gatling had discovered his symptomatic nonmalignant asbestos-related disease as early as 1987. Because the nonmalignant disease was discovered in 1987, the statute of limitations began to run at that time.[1] The present action filed in 2000 is well beyond the applicable statute of limitations. Appellants do not now claim the discovery of a malignant disease. Appellants may file another action upon discovery of a malignant disease, should one manifest itself. Accordingly, we find that Appellants' action is also barred by the statute of limitations. The trial court properly granted Appellees' motion for summary judgment.

¶ 27 Order affirmed.

---

1. Appellants assert that "asbestos-related pleural thickening and pulmonary (parenchymal) asbestosis are separate and distinct diseases." We note that pursuant to the description of asbestos-related diseases adopted by this Court in *Marinari,* that is not always the case. As the Court noted, "Pleural thickening, one of the manifestations of pleural asbestosis, may occur independent of or in conjunction with pulmonary asbestosis." *Marinari,* 612 A.2d at 1025.