Eleanor ABRAMS, Executrix of the Estate of Kenneth Abrams, Appellant

v.

PNEUMO ABEX CORPORATION, American Standard, Inc., A.W. Chesterton, Inc., Brand Insulation, Inc., Brown Boveri Corporation, Burnham Boiler Corporation, Certainteed Corporation, Cleaverbrooks Co., Crane Co., Demming Division, Crane Packing, Crouse–Hinds, Crown Cork & Seal Company, Inc., Dana Corporation, Dresser Industries, Inc., Durabla Manufacturing Co., Eastern Gunnite Co., Inc., Georgia Pacific Corporation, Goulds Pumps, Inc., Greene Tweed & Co., Inc., Hajoca Plumbing Co., Halliburton Co., Honeywell, McArdle–Desco Corporation, Melrath Gaskets, Inc. Metropolitan Life Insurance Co., Nosroc Corporation, Pars Manufacturing Co., Pecora Corporation, Pfizer, Inc., Quigley Co., Inc., Railroad Friction Products, The Reading Company, Riley Stoker Corporation, Rockbestos Company, Union Carbide Corporation, Walter B. Gallagher Co., Weil McLain Co., Westinghouse Electric Corporation and John Crane, Inc., Appellees.

Marilyn Shaw, Executrix of the Estate of John Shaw, Appellant

v.

A.W. Chesterton, Inc., Brand Insulation Inc., Certainteed Corporation, Cleaverbrooks, Co., Crane Co., Demming Division, Crane Packing, Crown Cork and Seal Company, Inc. Dana Corporation, Durabla Manufacturing Co., Georgia Pacific Corporation, Goulds Pumps, Inc., Greene Tweed & Co., Inc. Melrath Gaskets, Inc., Metropolitan Life Insurance Co., Nosroc Corporation, Pars Manufacturing Co., Pecora Corporation, Rapid American Corporation, Riley Stoker Corporation, Union Carbide Corporation, Walter B. Gallagher Co., Weil McLain Co., Viacom/Westinghouse Electric Corp., Anchor Packing Co., Combustion Engineering, Inc. Crouse–Hinds, Durametallic Corp., Garlock, Inc. General Electric Co., Hajoca Plumbing Co., Ingersoll Rand, Studebaker–Worthington, Inc., Zurn Industries, John Crane, Inc., Appellees.

Superior Court of Pennsylvania.

Argued Oct. 26, 2006.

Filed Dec. 17, 2007.

Steven J. Cooperstein, Philadelphia, for appellants.

Michael A. Pollard and William Russell Adams, Philadelphia, for appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, MUSMANNO, ORIE MELVIN, LALLY–GREEN, KLEIN, BENDER, BOWES and PANELLA, JJ.

OPINION BY BOWES, J.:

¶ 1 Eleanor Abrams, the executrix of the estate of Kenneth Abrams, and Marilyn Shaw, the executrix of the estate of John Shaw, appeal from the grant of summary judgment in favor of John Crane, Inc. ("John Crane" or "Crane") in these personal injury actions.[1] We affirm.

¶ 2 The Shaws and the Abramses instituted these lawsuits on February 25, 2003, alleging that Mr. Shaw and Mr. Abrams ("the decedents") were diagnosed with lung cancer in December 2002 and that their injuries stemmed from occupational exposure to asbestos-containing products made by John Crane and various other companies. On February 11, 2005, John Crane filed a motion for summary judgment in both cases arguing that the parties' claims were barred by the statute of limitations. Specifically, Crane asserted that both couples successfully sued numerous companies for asbestos-related injuries in the mid–1980s, that those lawsuits included claims for increased risk and fear of developing cancer, and that Crane should have been named as a defendant in those actions because prior to 1992, plaintiffs were required to bring all claims for existing nonmalignant conditions and predictable malignant diseases, e.g., cancer, within two years of the initial diagnosis of an asbestos-related disease. The trial court agreed and granted Crane's motions for summary judgment.[2]

▮▮▮▮ ¶ 3 On June 9, 2006, a panel of this Court published an opinion in which the majority reversed and remanded for further proceedings. John Crane filed a timely application for *en banc* reargument, which was granted on August 15, 2006, and the June 9, 2006 opinion was withdrawn. We now conclude that the trial court's ruling was correct and therefore affirm the grant of summary judgment in favor of John Crane.

Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus,

---

1. Mr. Shaw and Mr. Abrams died after these actions were filed, and their widows were substituted as plaintiffs in their capacity as executrices of their late husbands' estates. *See* Appellants' brief at 5.

2. The orders in question became final and appealable on April 4, 2005, when the trial court entered an order declaring both actions settled with respect to all remaining defendants. *See* Pa.R.A.P. 341(b)(1).

summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

*Rudy v. A–Best Products Company*, 870 A.2d 330, 333 (Pa.Super.2005) (quoting *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 651 (Pa.Super.2002)). As our examination of the trial court's ruling involves a question of law, our scope of review is plenary. *Roth Cash Register Company, Inc. v. Micro Systems, Inc.*, 868 A.2d 1222 (Pa.Super.2005). We will not reverse a grant of summary judgment unless the trial court committed an error of law or abused its discretion. *Rudy, supra.*

¶ 4 In the case at bar, the record confirms that the Abramses and the Shaws instituted asbestos actions approximately twenty years ago. Mr. and Mrs. Abrams brought suit in March 1986 against several corporate defendants after Mr. Abrams was diagnosed with, *inter alia*, "asbestos-related lung diseases" on April 12, 1984. Abrams Complaint, 3/20/86, at ¶ 6. In that case, the Abramses sought damages for all existing and future injuries caused by asbestos particles emitted by the defendants' products, including "traumatic fear of an increased risk of [developing] . . . cancer."

*Id.* at ¶ 47, 48. Similarly, the Shaws filed suit in September 1985 against numerous companies after Mr. Shaw was diagnosed with asbestosis and "chronic restrictive pulmonary lung disease" on January 2, 1985. Shaw Complaint, 9/25/85, at ¶ 30. The Shaws sought damages for existing injuries, risk of developing mesothelioma and other forms of cancer, and "traumatic neurosis or cancerophobia."[3] *Id.* at ¶ 28. Appellants concede that both actions were settled in 1993. *See* Appellants' brief at 5.

¶ 5 When those cases were litigated, Pennsylvania law provided that plaintiffs were required to bring a single lawsuit encompassing all claims for present damages caused by their nonmalignant diseases and all claims for future damages premised on an increased risk of developing a malignant illness such as cancer. *See Giovanetti v. Johns–Manville Corporation*, 372 Pa.Super. 431, 539 A.2d 871 (1988). Under that rigid approach, the statute of limitations for all predictable asbestos-related injuries began to run when the plaintiff was first diagnosed with an asbestos-related disease. *Id.* As time progressed, however, litigants and courts began to criticize the practice of enabling plaintiffs to recover damages for illnesses that had not yet been diagnosed. Thus, this Court announced a new rule of law in *Marinari v. Asbestos Corp., Ltd.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992) (*en banc*).

¶ 6 In *Marinari*, the plaintiff was informed that he had pleural thickening in 1983, but he did not institute a lawsuit as

---

**3.** In his dissent, Judge Stevens concedes that the Shaws previously sued for increased risk of cancer but maintains that the Abramses sued only for fear of developing cancer, which is a different cause of action. The record belies this assertion. In their prior lawsuit, the Abramses brought claims for "injuries to [Mr. Abrams's] respiratory system . . . and other diseases which have not yet been diagnosed," *i.e.*, cancer. Abrams Complaint, 3/20/86, at ¶ 45. Moreover, in the present appeal, Appellants have acknowledged that both of the prior actions included claims for increased risk of cancer. *See* Appellants' brief at 18 ("The prior claims were merely for increased risk and fear of cancer due to occupational exposure to asbestos . . . .").

he was not experiencing breathing problems. Then, in July 1987, the plaintiff was diagnosed with lung cancer attributable to asbestos exposure and commenced an action against several companies seeking damages solely for his cancer-related injuries. The defendants filed motions for summary judgment, arguing that the lawsuit was subject to a two-year statute of limitations that began to run in 1983 when the plaintiff was diagnosed with pleural thickening. The trial court granted the defendants' motions, and the plaintiff appealed.

¶ 7 In an *en banc* decision, this Court reversed the trial court's ruling and held that the plaintiff's knowledge of a nonmalignant, asbestos-related lung condition did not trigger the statute of limitations "with respect to an action for a later, separately diagnosed, disease of lung cancer." *Id.* at 1022. In reaching this conclusion, we recognized that "exposure to asbestos may result in a variety of benign and malignant conditions, each of which may occur at widely divergent times." *Id.* at 1024. We also observed that the process of awarding damages for future harm caused by undiagnosed diseases was inherently problematic because it entailed reliance on speculative evidence and produced inequitable results in cases where the plaintiff failed to develop a malignant illness. We therefore determined that plaintiffs with nonmalignant asbestos-related conditions would no longer be required to concurrently assert claims for malignant asbestos-related diseases that had not yet developed, stating as follows:

> The approach to asbestos litigation suggested in *Manzi [v. H.K. Porter Co.,* 402 Pa.Super. 595, 587 A.2d 778 (1991)], of allowing an action for nonmalignant asbestos disease and a separate action for cancer, we believe, represents the better view. In such actions, recovery can be had in a first action only for a

disease which has already manifested itself from the exposure to asbestos and the natural, predictable progression, if any, of that disease. If additional injuries from a separate disease manifest themselves in the future, such injuries will support a second action.

*Id.* at 1023. Our Supreme Court subsequently embraced this principle in *Simmons v. Pacor, Inc.,* 543 Pa. 664, 674 A.2d 232 (1996), when it announced that plaintiffs with nonmalignant diseases caused by asbestos exposure could no longer recover damages for increased risk of cancer following the adoption of the so-called "two-disease rule" in *Marinari.*

¶ 8 In the instant case, the trial court concluded that Appellants' present claims were barred by the statute of limitations because they had recovered damages for cancer-related injuries in their prior lawsuits, which were filed during the period when plaintiffs had to sue for all foreseeable malignant diseases within two years of the diagnosis of any asbestos-related injury. Appellants maintain that the trial court's ruling was improper for several reasons. First, they argue that the factual background of this case is virtually identical to the underlying facts in *Marinari,* and thus, that case is controlling and necessitates a finding that the present lawsuits were timely filed within two years of the discovery of the decedents' lung cancer. Second, Appellants assert that two cases decided after *Marinari* indicate that plaintiffs who have recovered damages for increased risk and fear of cancer in previous lawsuits may institute a subsequent action based upon an actual diagnosis of cancer. Finally, Appellants contend that they should be allowed to litigate the decedents' lung cancer claims because individuals who settled claims for increased risk and fear of developing can-

cer prior to *Marinari* were not adequately compensated for their injuries.

¶ 9 Appellants' initial argument that this case is factually indistinguishable from *Marinari* is baseless. Unlike Mr. Shaw and Mr. Abrams, who recovered damages for cancer-related injuries in previous lawsuits and then proceeded to file additional actions, the plaintiff in *Marinari* filed a single lawsuit seeking damages for asbestos-related cancer four years after he opted to forego an action for nonmalignant, asymptomatic pleural thickening. Indeed, the issue in *Marinari* was whether that plaintiff's failure to bring an action for pleural thickening in 1983 precluded a subsequent cause of action for a "distinct, separate disease" such as cancer. *Marinari, supra* at 1028. Conversely, the issue herein is whether a party who was compensated for increased risk and fear of developing asbestos-related cancer in a prior action can sue a new defendant many years later based upon a recent diagnosis of cancer. Hence, the two cases are readily distinguishable.

¶ 10 In asserting that post-*Marinari* case law warrants reversal of the orders in question, Appellants devote a significant portion of their brief to an argument that this case does not involve retroactive application of *Marinari*. *See* Appellants' brief at 10–16. We agree with Appellants on this point. This Court has only applied *Marinari* retroactively to vacate damage awards for increased risk and fear of cancer in appeals that were pending when *Marinari* was decided. *See, e.g., Dempsey v. Pacor, Inc.,* 429 Pa.Super. 404, 632 A.2d 919 (1993). Thus, we now address Appellants' primary contention that this Court's decisions in *Giffear v. Johns–Manville Corp.,* 429 Pa.Super. 327, 632 A.2d 880 (1993) (*en banc*), *aff'd sub nom. Simmons v. Pacor, Inc.,* 543 Pa. 664, 674 A.2d 232 (1996), and *McCauley v. Owens–Corning Fiberglas Corp.,* 715 A.2d 1125 (Pa.Super.1998), indicate that a plaintiff who has already recovered damages for increased risk and fear of cancer may institute a subsequent lawsuit after contracting that disease.

¶ 11 In *Giffear, supra,* the plaintiff commenced an action seeking compensation for physical injuries and increased risk of cancer after an x-ray revealed that he had pleural thickening. The plaintiff prevailed at trial, but the judge granted the defendants' post-trial motions for judgment notwithstanding the verdict. On appeal, we considered whether asymptomatic pleural thickening was a compensable injury and whether the plaintiff could recover damages for increased risk of cancer absent a diagnosis of cancer, answering both questions in the negative.

¶ 12 Appellants suggest that *Giffear* is instructive because the *Giffear* Court remarked that the plaintiff in that case could bring a separate action if he was later diagnosed with cancer. In arguing this point, however, Appellants ignore the fact that the plaintiff in *Giffear,* unlike Mr. Shaw and Mr. Abrams, was not compensated for cancer-based claims in a prior asbestos lawsuit. Hence, the *Giffear* Court's offhand comment regarding the possibility of a separate cancer action in that instance did not imply, as Appellants suggest, that "the bringing of a nonmalignancy action that included assertion of increased risk and fear of cancer claims does not bar a plaintiff from bringing a subsequent cancer claim under the separate disease rule." Appellants' brief at 17. Rather, the *Giffear* Court sought to clarify that **since it had determined that the plaintiff's *initial* risk-of-cancer claim did not allege a compensable injury under Pennsylvania law,** the plaintiff was free to institute a separate action under *Marinari* if he subsequently developed cancer.

The instant case is plainly distinguishable because Mr. Shaw and Mr. Abrams asserted their initial risk-of-cancer claims approximately seven years before *Marinari* and *Giffear* were decided, during a period when Pennsylvania courts **did** view "risk and fear of developing cancer" as a compensable injury.

¶ 13 Appellants' reliance on *McCauley, supra,* is similarly misplaced. The plaintiff in *McCauley* filed an action on May 5, 1993, alleging that he suffered from, *inter alia,* symptomatic pulmonary asbestosis that was first diagnosed on May 11, 1991. When the case proceeded to trial, the judge entered a compulsory nonsuit in favor of the defendants based on the statute of limitations. Specifically, the judge concluded that the action was time-barred because it was commenced more than two years after a May 7, 1985 chest x-ray revealed that the plaintiff had asymptomatic, nonmalignant pleural thickening. On appeal, we reversed and remanded for a new trial. We reasoned that although the plaintiff's failure to institute a timely action for nonmalignant plural thickening precluded recovery on that cause of action, the plaintiff could nonetheless seek damages for separate diseases such as pulmonary asbestosis that were diagnosed after 1985. Since the 1993 lawsuit was filed within two years of the discovery of the plaintiff's asbestosis, we found that the trial judge erred in granting a nonsuit.

¶ 14 Herein, Appellants suggest that the instant case is analogous to *McCauley* because their lung cancer claims against John Crane are completely different from the risk-of-cancer claims alleged in the prior actions. *See* Appellants' brief at 18. This contention is simply untenable; the risk-of-cancer claims advanced in the previous actions were premised on the assertion that Mr. Shaw and Mr. Abrams would contract cancer in the future as a result of occupational exposure to asbestos. Meanwhile, Appellants' present claims are founded on the identical assertion, *i.e.,* that both men did contract lung cancer due to that exposure. Therefore, the causes of action pursued by Mr. Shaw and Mr. Abrams in the 1980s pertained to the same malignant asbestos-related disease for which Appellants now seek to recover damages. Accordingly, the present case bears no resemblance to *McCauley.*

¶ 15 Finally, Appellants assert that they should be permitted to assert cancer claims against John Crane because they did not receive sufficient compensation for their risk-of-cancer claims in 1993. Specifically, Appellants insinuate that they settled their prior cancer claims for inadequate amounts because "[p]laintiffs who claimed a nonmalignant disease [prior to *Marinari*] were aware that they would face serious challenges over whether their injuries were compensable." Appellants' brief at 22. We find this argument unpersuasive. Appellants and their late husbands had an opportunity to sue John Crane for increased risk and fear of cancer during the 1980s but failed to do so, despite the fact that both couples knew they were required to assert all claims for present and future harm within two years of the initial diagnosis of an asbestos-related injury. As the statute of limitations applicable to the previous lawsuits expired long ago, John Crane reasonably believed that it would not have to defend these claims, and the company is entitled to repose due to the fact that it was not named as a defendant in the prior actions. *See Lesoon v. Metropolitan Life Insurance Company,* 898 A.2d 620 (Pa.Super.2006) (statutes of limitations are designed to effectuate preservation of evidence, the right of potential defendants to repose, and administrative efficiency).

¶ 16 Based on our review of the record, which confirms that no genuine issues of material fact exist and establishes that John Crane is entitled to judgment as a matter of law, we hereby affirm.

¶ 17 Judgments affirmed.

¶ 18 ORIE MELVIN, LALLY–GREEN, KLEIN and BENDER, JJ. join the Majority Opinion.

¶ 19 LALLY–GREEN, J. files a Concurring Statement in which KLEIN, J. joins.

¶ 20 STEVENS, J. files a Dissenting Opinion in which FORD ELLIOTT, P.J. and MUSMANNO and PANELLA, JJ. join.

¶ 21 MUSMANNO, J. files a Dissenting Opinion in which FORD ELLIOTT, P.J., and STEVENS and PANELLA, JJ. join.

CONCURRING STATEMENT BY LALLY–GREEN, J.:

¶ 1 I join in the Majority's opinion.

¶ 2 I understand and appreciate the position of our esteemed colleagues in the dissent. They astutely observe that "cancer-diagnosis" damages are distinct from "fear of future cancer" damages. More-over, I have no quarrel with the current, "enlightened" approach set forth in *Marinari v. Asbestos Corp., Ltd.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992) (*en banc*).

¶ 3 Nevertheless, the record reflects that the plaintiffs **in these particular cases** knew, and more importantly, were bound by the pre-*Marinari* state of the law. In the pre-*Marinari* era, plaintiffs were required to file suit, within the applicable statute of limitations, against **all** potential asbestos defendants upon being diagnosed with an asbestos-related disease, even if they had not yet developed cancer. The dissenting position, while appealing, would undermine the important goals of repose and finality in our judicial system, with regard to the plaintiffs and defendants in these cases. Thus, I join the Majority's opinion.

DISSENTING OPINION BY STEVENS, J.:

¶ 1 I join in Judge Musmanno's Dissent in its entirety, but write separately to amplify that "actual cancer diagnosis" damages are separate and distinct from "fear of an increased risk of cancer" damages flowing from nonmalignant asbestos-related disease.[4] The United States Supreme

---

**4.** In their respective civil complaints filed in the 1980s, both the Abrams and the Shaws alleged the husband/plaintiff was caused to contract, *inter alia*, other diseases not yet diagnosed, the full extent of which are not yet known. Only the Shaws' complaint, however, went further to claim "In addition, there is a risk of mesothelioma and other cancers, some or all of which may be permanent and eventually fatal...." It was this specific claim, alone, that raised the increased risk of cancer claim in the Shaws' complaint. The Abrams complaint, in contrast, never delineated an increased risk of cancer claim. Rather, the only "cancer-related" claim specifically delineated in the Abrams' complaint was a claim for "fear of increased risk of cancer" that husband/plaintiff was then experiencing. As explained *infra*, a fear of cancer claim contemplates an element of damages that differs from a cancer diagnosis claim. Consequently, I cannot conclude that the Abrams' present cancer claim was actually raised or necessarily decided in their 1986 action so as to bar their present action.

Determining that the Abrams' prior action neither sought nor recovered the damages sought in their present action, I would find their present action viable under *McCauley v. Owens–Corning Fiberglas Corp.*, 715 A.2d 1125 (Pa.Super.1998), where we declined to impose a limitations bar on a *Marinari*-era action for asbestosis that could have been brought six years earlier during the single-action rule era when the plaintiff first discovered a lesser, but nonetheless actionable, asbestos-related disease.

Court made this very distinction in a recent decision instructive [5] to our case.

¶ 2 In *Norfolk & Western Ry. v. Ayers*, 538 U.S. 135, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003), the United States Supreme Court held that the Federal Employers' Liability Act (FELA), incorporating the common law "separate disease rule," allowed railroad employees suffering from work-related asbestosis—a nonmalignant lung ¶ 4 cancer. In so holding, the Court examined the "separate disease rule" and reasoned:

> There is no inevitable conflict between the "separate disease rule" and recovery of cancer fear damages by asbestosis claimants. *The rule simply allows recovery for successive diseases and would necessarily exclude only double recovery for the same element of damages.*

*Ayers*, 538 U.S. at 153 n. 12, 123 S.Ct. 1210 (emphasis added). The Court thus recognized *present* fear that asbestosis heralds a future cancer as a recoverable damage discrete from damages attending any cancer that might arise in the future. *See Ayers* at 153, 155, 123 S.Ct. 1210 (citing the inequitable result obtained by excluding present recovery for the fear experienced by an asbestosis sufferer who never gets cancer; "In light of this evidence, an asbestosis sufferer would have good cause for increased apprehension about his vulnerability to another illness from his exposure, a disease that inflicts 'agonizing, unremitting pain,' relieved only by death.")

¶ 3 *Ayers* is thus instructive insofar as it shows the conceptual flaw in the Majority's approach of lumping all so-called "cancer-based" claims together for the purpose of holding that prior recovery of "fear of increased risk of cancer" damages precludes present recovery of "actual cancer" damages. In fact, the damages do not equate. The Abrams' 1986 fear claim did not seek recovery for the fear one expects to experience after terminal cancer is diag-

In *McCauley*, the plaintiff received a 1985 diagnosis of asbestos-related, asymptomatic pleural thickening. Because such an injury was actionable at the time, the plaintiff was required under the governing single-action rule to file a cause of action for all present and future asbestos-related claims within two years of his 1985 discovery. The plaintiff, however, allowed the limitations period to run without filing suit, ostensibly waiving all asbestos claims under the single-action rule. In 1993, after this Court instituted the two-disease rule in *Marinari*, the plaintiff filed a complaint seeking damages for pulmonary asbestosis, which had been diagnosed less than two years earlier. Defendants argued that plaintiff's claim was barred because his two year limitations period for all present and future asbestos-related disease, including future asbestosis, commenced upon his 1985 discovery of asymptomatic pleural thickening and had thus run by 1987. This Court disagreed. Applying the two disease rule, we held plaintiff had indeed waived his asymptomatic pleural thickening cause of action as of 1987, but had preserved his cause of action for the separate and distinct disease of asbestosis when he filed his claim within two years of the 1991 asbestosis diagnosis. Thus, the fact that plaintiff had foregone an action encompassing a future asbestosis claim during the single-action rule era did not bar him six years later from proceeding on a present asbestosis action filed timely during the two-disease rule era.

The same result should attain here for the Abrams. Having delineated only a fear of cancer claim in their 1986 complaint, they forewent recovery on a future cancer (increased risk of cancer) claim under the single-action rule. Under *McCauley*, however, the Abrams' election to forego a future cancer claim during the single-action rule era should not bar their present cancer claim filed timely during the two-disease rule era.

5. Though we are bound by United States Supreme Court decisions that address matters of federal law, the present case involves no federal issue. We are thus bound here only by prior decisions of the Pennsylvania Supreme Court and of this Court *en banc*.

nosed in the future. Rather, it sought recovery for the fear already experienced from having a disease known to presage cancer.[6] Subsequent recovery for actual cancer damages would therefore not run afoul of the separate disease rule's prohibition against "double recovery for the same element of damages." Nor, for that matter, would the Abrams—or the Shaws for that matter—receive a windfall recovery of damages never actually suffered, a principal inequity of the old single-action rule, for Appellants press their claims in the name of decedents.

¶ 4 Fifteen years ago, this Court professed that fair resolution of latent asbestos disease claims required us to eschew "blind adherence to rigid concepts" in favor of taking an "enlightened approach" enabling plaintiffs to assert timely claims for separate, distinct diseases as they arise. *See Marinari v. Asbestos Corp.,* 417 Pa.Super. 440, 612 A.2d 1021, 1027–28 (1992). The change was seen as necessary to protect those who developed the most severe injuries caused by asbestos. Today, we deny an asbestos plaintiff who seeks, for the first time, damages on a timely claim for the ultimate asbestos injury, terminal cancer, and instead limit him to the lesser and distinct damages he received seventeen years earlier for living with the fear that his lung disease possibly heralded cancer. This is precisely the inequitable result our new policy was intended to avoid. Accordingly, I join in the Dissent.

## DISSENTING OPINION BY MUSMANNO, J.:

¶ 1 I respectfully dissent.

¶ 2 Since 1992, Pennsylvania has followed the two-disease rule with regard to asbestos-related diseases. *See Marinari v. Asbestos Corp.,* 417 Pa.Super. 440, 612 A.2d 1021 (1992) (*en banc*). In *Marinari,* this Court held that a plaintiff's "discovery of a nonmalignant, asbestos related lung pathology ... does not trigger the statute of limitations with respect to an action for a later, separately diagnosed, disease of lung cancer." *Id.* at 1022.

¶ 3 In the instant case, while the Appellants previously recovered for fear of cancer, neither the Appellants nor Crane contend that Shaw or Abrams suffered from asbestos-related lung cancer prior to their respective diagnoses of that disease in December 2002. Clearly, lung cancer is a separate and distinct disease from the asbestos-related conditions for which the Appellants previously recovered. Further, recovery of damages for "fear of cancer" is not equivalent to recovery of damages after a diagnosis of the disease of cancer is made. There can be no dispute that lung cancer is a separate and distinct disease from the asbestos-related medical conditions for which the Appellants previously recovered damages. In addition, the record is clear that the Appellants did not sue Crane in the previous actions.

¶ 4 The record shows that Shaw and Abrams were diagnosed with lung cancer in 2002. They filed the present actions in 2003, well within the two-year statute of limitations. Therefore, I would conclude that the Appellants have valid claims, which are not precluded by the statute of limitations. The Appellants have not recovered anything from Crane, and they each sued within two years of Shaw's and Abrams's lung cancer diagnoses. Accord-

---

**6.** That our jurisprudence has adopted the policy of now requiring claimants to defer "fear of increased risk of cancer claims" until after receiving a cancer diagnosis does not affect the analysis here. The fear of developing a future cancer and the fear experienced while having cancer are two distinct elements of damages.

ingly, the Appellants should be entitled to a trial before a fact-finder.