Levi H. RUDY and Charlotte Rudy

v.

A–BEST PRODUCTS COMPANY, AC & S, Inc., Allied Glove Corporation, Anchor Packing, Cashco, Inc., CBS Corporation, Certainteed Corporation, Childers Products Company, Inc., Claud S. Gordon, Combustion Engineering, Crane Valve Group, Crown, Cork & Seal, Dana Corporation, Dezurik, Inc., Durable Manufacturing, Durametallic Corporation, Elsa Benson, Fabri–Valve, Division of ITT Grinnell Valve Company, Foster Wheeler Corporation, Gage Company, Garlock, Inc., General Refractories Company, Gilbert & Associates, Inc., Goodyear, GPU, Inc., GPU Nuclear, Inc., GPU Service, Inc., Green Tweed & Company, Grinnell Corporation, Hajoca Corporation, Hinchliffe & Keener, Inc., Honeywell, Inc., Industrial Holdings & Ingersoll Rand, Jersey Central Power & Light, John Crane, Inc., Joy Technologies, Leroy Roofing Company, Marley Company, Marley Cooling Tower Company, Melrath Supply and Gasket Company, Metropolitan Life Insurance, Metropolitan Edison, Nagel Pumps, Inc., Parker Hannifin Corporation, Penelec, P.F. Glatfelter, Inc., Pfizer, Inc., Quigley Company, Rapid American, Raytheon Constructors f/k/a Catalytic, Inc., Rhone–Poulenc Ag, Riley Stoker Corporation, Robertson CECO f/k/a HH Robertson, Safety–First Industries, Sager Corporation, Sealite, Inc., Sepco Corporation, Stockhold Valves & Fittings, Transco Products, Unifrax Corporation, Union Carbide Corporation, Uniroyal, Inc., Wayne Crouse, Inc.

Appeal of: Troy Rudy Executor of the Estate of Levi H. Rudy, Jr., Deceased and Charlotte Rudy.

Superior Court of Pennsylvania.

Argued Sept. 29, 2004.

Filed Feb. 17, 2005.

Reargument Denied April 13, 2005.

David B. Rodes, Pittsburgh, for appellants.

Meghan F. Wise, Pittsburgh, for GPU Nuclear, GPU Inc., GPU Service, Penelec, Metropolitan Edison, Jersey City Power & Light, appellants.

BEFORE: MUSMANNO, LALLY–GREEN, and McCAFFERY, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellants, Troy and Charlotte Rudy, appeal from the order dated December 16, 2003. This order entered a final judgment in favor of defendants/appellees, Metropolitan Edison Company, Jersey Central Power & Light Company, Pennsylvania Electric Company, GPU Service, Inc., GPU Nuclear, Inc., and GPU, Inc. (collectively, "the TMI Defendants"). We affirm.

¶ 2 The factual and procedural history of the case is as follows. Levi Rudy ("Rudy") worked as a plumber/pipefitter at the Three Mile Island ("TMI") Power Station from 1969 to 1980. Rudy was an employee of independent contractors at the site. Rudy allegedly contracted mesothelioma as a result of inhaling asbestos fibers at the site.

¶ 3 On January 3, 2001, Rudy and his wife Charlotte filed a multi-count complaint against the TMI Defendants.[1] After Rudy died, the court substituted Troy Rudy, the executor of Rudy's estate, as a plaintiff.

¶ 4 The TMI Defendants filed a motion for summary judgment, arguing that they were not liable for Rudy's asbestos exposure. The trial court granted this motion on September 10, 2003. On December 16, 2003, the trial court entered a final order indicating that "all claims in, and all parties to, this action are disposed of." This appeal followed.[2]

¶ 5 Appellants raise two issues on appeal:

(1) Whether a possessor of land is liable to an employee of a contractor for injuries caused by the possessor's independent negligence?

(2) Whether the circumstances of this case place it within one of the exceptions to a possessor's nonliability to an employee of an independent contractor?

Appellant's Brief at 4.

¶ 6 As noted above, the trial court granted summary judgment to the TMI Defendants. This Court recently summarized the principles of summary judgment, and our standard of review, as follows:

1. In this complaint, the Rudys also sought damages from many other defendants who are no longer part of this action.

2. Appellants complied with the trial court's order to file a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P. 1925. Appellants filed a very general Concise Statement, arguing that the trial court erred by entering summary judgment. The trial court accurately identified the central issues in this case, and issued a helpful Rule 1925 opinion.

Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

As already noted, on appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.

*Gutteridge v. A.P. Green Servs.*, 804 A.2d 643, 651 (Pa.Super.2002) (citations omitted), *appeal denied*, 574 Pa. 748, 829 A.2d 1158 (2003).

■ ¶ 7 Appellants argue that the TMI Defendants are liable because they possessed the site and negligently failed to provide a safe work environment for workers like Rudy. Appellants base this claim on principles of premises liability. In *Gutteridge*, this Court explained that Pennsylvania's law of premises liability generally **insulates** possessors of land from liability for harm suffered by employees of independent contractors. *Gutteridge*, 804 A.2d at 656. The *Gutteridge* test for imposing liability on a possessor of land is as follows:

A possessor of land is subject to liability for physical harm caused to his invitees [3] by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Id.*, quoting, *Summers v. Giant Food Stores, Inc.*, 743 A.2d 498, 506 (Pa.Super.1999) (*en banc*), *appeal denied*, 564 Pa. 713, 764 A.2d 1071 (2001).

■ ¶ 8 *Gutteridge* teaches that, in order for premises liability to attach, Appellants must first establish that the TMI Defendants were in fact possessors of the TMI site. *Id.* A possessor of land is one "who is in occupation of land with intent to control it." *Restatement (2d) of Torts*, § 328E.

---

3. It is undisputed that as an employee of an independent contractor, Rudy was a business invitee at the TMI site. *Gutteridge*, 804 A.2d at 656.

¶ 9 The record reflects the following. First, Metropolitan Edison admits that it was a possessor of the land. Metropolitan Edison states in its brief that "at all pertinent times, only Metropolitan Edison was in possession of the power station and was solely responsible for its operation." TMI Defendants' Brief at 5.

¶ 10 On the other hand, the record does not reflect that any of the other defendants were possessors. Appellants cited no evidence to support the proposition that any of these other entities occupied the land with the intent to control it.[4] Thus, the court properly granted summary judgment to the non-possessor defendants.

¶ 11 The remainder of this Opinion will address whether the court erred in granting summary judgment to Metropolitan Edison. As noted above, Appellants argue that Metropolitan Edison negligently failed to provide a safe work environment at the TMI site. Specifically, Appellants argue that: (1) the TMI site contained extensive amounts of asbestos; (2) Metropolitan Edison ordered many different independent contractors to install asbestos-containing products at the same time that Rudy was doing his own work; (3) Metropolitan Edison ordered independent contractors to use asbestos-containing products; and (4) Metropolitan Edison supplied asbestos-containing products to the independent contractors. Appellants' Brief at 12–15.

¶ 12 Appellant's argument that Metropolitan Edison negligently failed to provide a safe work environment at the TMI site is misplaced. As we explained in *Gutteridge,* "Pennsylvania law imposes no general duty on property owners to prepare and maintain a safe building for the benefit of a contractor's employees who are working on that building." *Gutteridge,* 804 A.2d at 656.

¶ 13 Rather, plaintiffs must generally establish all three prongs of the *Gutteridge/Summers* test. *Id.* Specifically, the plaintiff must show that the possessor of land "should expect that [the invitee] will not discover or realize the danger, or will fail to protect [himself] against it." *Id.*

¶ 14 The TMI Defendants noted that Rudy was an experienced plumber/pi-

---

4. The TMI Defendants describe their own status as follows. The Pennsylvania Electric Company and Jersey Central Power and Light were part owners in title to the TMI facility, but did not occupy the site. TMI Defendants' Brief at 6. GPU Services, Inc. "provided professional support services" to the operators of TMI, but did not themselves occupy the site with the intent to control it. *Id.* at 7. GPU, Inc. was a holding company and parent corporation of Metropolitan Edison, but did not in and of itself occupy the land. *Id.* Finally, GPU Nuclear was incorporated in December 1980, after Rudy stopped working at TMI. *Id.*

Appellants offer no meaningful response to these allegations. First, we note that Appellants never attempted to establish in their principal brief that any of these defendants were in fact possessors. Rather, Appellants merely **assumed** that they were possessors. After the TMI Defendants raised the posses-

sion issue in their own brief, Appellants finally addressed that issue in their reply brief. Specifically, Appellants argue that the TMI Defendants' statements are mere assertions of counsel, without evidentiary support. Appellants' Reply Brief at 2.

Appellants' argument is misplaced. Summary judgment is appropriate if the **plaintiff**, as the party with the burden of proof at trial, "has failed to produce evidence of facts essential to the cause of action[.]" Pa.R.C.P. 1035.2. In other words, the TMI Defendants are entitled to simply point to Appellants' lack of evidence on a critical fact. *Id.*

This is precisely what the TMI Defendants did. They pointed to Appellants' failure to present any evidence that they were possessors. Under the circumstances of this case, possession is an essential element of premises liability. *Gutteridge.* Appellants' failure to present competent evidence on this point entitles these defendants to summary judgment.

pefitter who knew of the danger of asbestos through his employment and his membership in his union. Appellants have made no effort to rebut this point in their brief on appeal. Rather, they focus almost exclusively on what the **TMI Defendants** knew about asbestos. Their silence about Rudy's knowledge of asbestos is deafening. Thus, we readily conclude that Metropolitan Edison was not liable under the general three-part test set forth in *Summers.*

¶ 15 This does not end our analysis, however. Our Courts have recognized two exceptions to the general rules of premises liability set forth above: (1) the "peculiar risk" doctrine; and (2) the "superior knowledge" doctrine. Appellants argue that both doctrines apply. We will address each one in turn. *Gutteridge,* 804 A.2d at 656–657.

¶ 16 First, Appellants argue that Metropolitan Edison was liable under the "peculiar risk" doctrine. The *Gutteridge* Court explained this doctrine as follows:

> The "peculiar risk" doctrine was endorsed by our Supreme Court when it adopted sections 416 and 427 of the Restatement (Second) of Torts in *Philadelphia Electric Co. v. James Julian, Inc.,* 425 Pa. 217, 228 A.2d 669 (1967). A "peculiar risk" (or "special danger") exists when: (1) a risk is foreseeable to the employer of an independent contractor at the time the contract is executed (that is, if a reasonable person in the position of the employer would foresee the risk and recognize the need to take special measures); and (2) the risk is different from the usual and ordinary risk associated with the general type of work done (that is, **the specific project or task chosen by the employer involves circumstances that are substantially out-of-the ordinary**). *Ortiz v. Ra–El Development Corp.,* 365 Pa.Super. 48, 528 A.2d 1355, 1358 (Pa.Super.1987).

*Gutteridge,* 804 A.2d at 656–657 (emphasis added). Courts must construe the "peculiar risk" doctrine narrowly, in recognition of the fact that most construction work contains some element of risk. *Mentzer v. Ognibene,* 408 Pa.Super. 578, 597 A.2d 604, 611 (1991).

¶ 17 Even assuming *arguendo* that Appellants established the first prong of the "peculiar risk" test (foreseeability), it is clear that Appellants did not create a material issue of fact on the second prong. Appellants cited to no evidence that Rudy's work "involved circumstances which were substantially out of the ordinary." *Id.* It is undisputed that Rudy routinely installed and removed asbestos-containing material. In other words, asbestos exposure was a common (albeit serious) risk of Rudy's job. Appellants have failed to point to any aspect of Rudy's job which can be fairly characterized as a "peculiar risk." Appellants do accurately note that asbestos is an inherently dangerous product, but this does not in and of itself establish a **peculiar** risk to someone such as Rudy. This claim fails.

¶ 18 Finally, Appellants argue that Metropolitan Edison is liable under the "superior knowledge" doctrine. Again, we turn to *Gutteridge* for guidance:

> [T]he employer of an independent contractor has no duty to warn either the contractor or his employees of a condition that is at least as obvious to them as it is to him. The question of whether a landowner owes a duty to warn an independent contractor of dangerous conditions on the premises turns on whether the owner possesses "superior knowledge" or information which places him in a better position to appreciate the risk posed to the contractor or his employees by the dangerous conditions.

*Gutteridge,* 804 A.2d at 658–658, *citing, Colloi v. Philadelphia Electric Co.,* 332 Pa.Super. 284, 481 A.2d 616, 620 (1984).

¶ 19 Again, Appellants focus exclusively on Metropolitan Edison's knowledge of the hazards of asbestos. On the other hand, Metropolitan Edison presented evidence that Rudy also had substantial knowledge of asbestos hazards through his union, employers, and co-workers.

¶ 20 Appellants have made no effort to compare Rudy's knowledge to that of Metropolitan Edison. Appellants develop no argument on whether Metropolitan Edison's knowledge was "superior" in any meaningful respect to Rudy's own knowledge. Thus, construing the evidence in the light most favorable to Appellants as the non-moving parties, we conclude that Appellants have failed to create a genuine issue of fact that Metropolitan Edison possessed superior knowledge. *Compare, Gutteridge,* 804 A.2d at 660 (summary judgment in favor of electric company was not warranted where the evidence showed that the electric company knew of the hazards of asbestos, but no similar evidence existed regarding the plaintiff/telephone worker's knowledge). Appellants' final claim fails.

¶ 21 Order affirmed.