J-S07032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ALBERT E. EISBACHER AND LUCILLE EISBACHER, HIS WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| MAYTAG CORPORATION, MAYTAG SALES INC., MAYTAG NORTHEAST, REGIONAL DISTRIBUTION CENTER, F.R. COVINGTON PROPERTY HOLDING L.P., FIRST INDUSTRIAL DEVELOPMENT INVESTORS, LLC, FIRST INDUSTRIAL DEVELOPMENT SERVICES, FIRST INDUSTRIAL REALTY, COVINGTON INDUSTRIAL PARK OWNER'S ASSOCIATION, AKA COVINGTON INDUSTRIAL PARK, AND CAMMEBY'S MANAGEMENT COMPANY LLC. | |
| Appellee | No. 1163 MDA 2015 |

Appeal from the Order Entered May 28, 2015
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 08-CV-1534

BEFORE:  BOWES, OTT AND FITZGERALD,* JJ.

CONCURRING MEMORANDUM BY BOWES, J.:      **FILED MARCH 09, 2017**

I concur in the learned majority's decision to vacate the trial court's entry of summary judgment and remand for further proceedings.  It is my belief that the record is more than sufficient to conclusively establish that

_____

* Former Justice assigned to the Superior Court.

Maytag was the possessor of the premises and owed a duty to Appellant, its invitee.[1]

I write separately because I do not share my colleagues' belief that the lease fails to resolve the issue of possession. The lease between Goldsboro and Maytag establishes that the trailer drop lot was not a common area under Goldsboro's possession and control. The diagrams appended thereto clearly indicate that the trailer drop lot is part of Maytag's sixty-acre leased premises. In order for a party to be a "possessor" of land, it must fit one of the following descriptions: it must be in occupation of the land with the intent to control it, it must have been in occupation of the land with intent to control it if no other party has done so subsequently, or it is entitled to immediate occupation if neither of the other alternatives apply. Restatement (Second) of Torts § 328E (1965); *Rudy v. A-Best Prods. Co.*, 870 A.2d 330, 333 (Pa.Super. 2005). The only party that meets that test is Maytag. It occupied the trailer drop lot with intent to control it.

_____

[1] Maytag has not challenged Appellant's contention that he was a business visitor of Maytag, *i.e.*, one "invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land." *Gutteridge v. A.P. Green Servs.*, 804 A.2d 643, 655-656 (Pa.Super. 2002). A possessor of land owes a business invitee the highest duty owed to any entrant upon land, and must protect an invitee not only against known dangers, but also against those that might be discovered with reasonable care. *Id*.

All of the evidence confirms that Maytag was the possessor of the trailer drop lot.[2]  Maytag leased the property for use as a distribution center and warehouse for appliances.  Maytag's leased premises were entirely fenced in, and there was one means of ingress and egress onto Maytag's property.  That access road was controlled by a guardhouse staffed by Maytag's contractor.

Truck drivers delivering empty trailers and retrieving loaded trailers for delivery stopped at the guardhouse before entering Maytag's premises. They then proceeded to the trailer drop lot, a lot allegedly constructed by Maytag after it leased the property.  Maytag stored trailers on the lot until its yard jockey or spotter moved them to the warehouse doors for loading.  The lot consisted of paved access roads between rows of trailers sitting on unpaved dirt or hardpan surfaces.  Appellant offered considerable evidence that, during the winter, snow and ice accumulated in the areas beneath and adjacent to the trailers and mixed with the hard-packed dirt.  The surface was rough and uneven due to ruts created by tire tracks, the constant movement of tractors and trailers, and repeated freeze and thaw.

---

[2]  While there is authority for the proposition that whether a party is a possessor of land is a question for the factfinder, in each instance there was a genuine factual dispute as to who occupied and controlled the property or who had the right to control the property. *see Leichter v. Eastern Realty Company*, 516 A.2d 1247, 1249 (Pa.Super. 1986); *Blackman v. Federal Realty Inv. Trust*, 664 A.2d 139, 142 (Pa.Super. 1995).  Herein, Maytag clearly occupied and controlled the property.

On the winter day at issue, Appellant, a tractor–trailer driver for a third-party contractor, described how he entered the drop lot towing an empty trailer. He looked for a "hole," an empty space between other trailers, and backed in the trailer. In order to disconnect the trailer from the tractor, it was necessary for him to leave the cab and walk on the accumulated ice and snow on the unpaved ground between his trailer and the adjacent trailer to physically remove the pins connecting the tractor and trailer. He was returning to his cab when he slipped on the uneven ice and snow, struck his head on the trailer, and was rendered unconscious.

The majority concludes that there are disputed issues of fact as to possession of the lot because the lease between Goldsboro and Maytag provided that Goldsboro would procure snow removal services for all "parking areas, loading areas, and roadways on the [Maytag's] premises." I disagree. The issue is not who was responsible for removing snow; the issue is who possessed, *i.e.*, occupied and controlled, the property. Goldsboro's commitment to hire a snow removal contractor, for which Maytag paid additional rent, did not affect or supplant Maytag's occupation of and control over the leased property. Similarly, Dunbar's occasional entry onto Maytag's premises to remove snow did not amount to occupation of the land with intent to control it. In short, I believe the majority's focus on responsibility for snow removal, though pertinent to the ultimate questions of negligence and responsibility for Appellant's injury, is irrelevant to our

present determination as to whether Maytag possessed the trailer drop lot and thus owed a duty to Appellant.

As the possessor of land, Maytag is subject to liability to Appellant, its business invitee, for physical harm caused by a dangerous condition on its premises, if it knew or reasonably could have known of the condition and fails to exercise reasonable care to protect him. Restatement (Second) of Torts, § 343. The highest duty of care is owed to business invitees such as Appellant who enter the property in furtherance of the possessor's business. That includes a duty to inspect the premises and remedy dangerous conditions that could be discovered with reasonable care.

I submit it is precisely because the possessor of land owes a duty to keep its premises safe for invitees and licensees that Maytag paid additional rent to Goldsboro for snow removal. In turn, Goldsboro contracted with Dunbar's for the performance of the service. Goldsboro or Dunbar's may yet be liable for indemnity to Maytag for the breach of those contracts. However, the contract provisions regarding snow removal responsibility do not implicate the larger question of whether Maytag possessed the premises. They certainly do not operate to relieve Maytag of its common law duty as a possessor of land to protect its business invitees from dangerous conditions on the premises. Maytag's contention that it did not possess the leased premises, as defined in the Restatement (Second) of Torts Section 328E,

- 5 -

merely because another entity occasionally removed snow from the premises, is legally untenable.

Certainly, Appellant could have instituted this lawsuit against all three entities: Maytag, Goldsboro, and Dunbar's. Maytag could have joined Goldsboro and Dunbar's as parties in this action to determine their liability. In either case, liability against Goldsboro and Dunbar's would have been predicated upon their negligent performance of their contractual obligations to remove snow, a duty they arguably owed to both Maytag and Appellant. *See Evans*, *supra*; Restatement (Second) of Torts § 324A;[3] *see also Farabaugh v. Pennsylvania Turnpike Commission*, 911 A.2d 1264, 1283 (Pa. 2006) (quoting *Evans*, *supra* and discussing purview of § 324A). In that event, Appellant could have argued that, since the snow removal

---

[3] Section 324A of the Restatement (Second) of Torts, entitled "Liability to Third Person for Negligent Performance of Undertaking," provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

contract was intended to protect and benefit third persons at risk from injury due to accumulated ice and snow on Maytag's property, both Dunbar's and Goldsboro were legally obligated to perform their contractual undertaking in a manner consistent with the standard of care. *See Evans v. Otis Elevator Co.*, 168 A.2d 573, 575-576 (Pa. 1961) (quoting Prosser, Torts, (2nd ed. 1955), § 85, pp. 514-519). That, however, is not the scenario before us.

Maytag is the sole defendant and has a duty to Appellant as the possessor of the premises where he was injured. If Appellant is successful in proving that Maytag breached its duty of care to provide a reasonably safe premises for its invitee, Maytag's recourse is to seek indemnity from Goldsboro and/or Dunbar's pursuant to the terms of the contracts.